| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF WAKE | IN THE OFFICE OF<br>ADMINISTRATIVE HEARINGS<br>20 OSP 02124 |

| | |
|---|---|
| JUDITH KNECHTGES,<br><br>    Petitioner,<br><br>v<br><br>DEPARTMENT OF PUBLIC SAFETY,<br><br>    Respondent. | **RULE 59 AND 60 MOTIONS** |

## RULE 59 MOTION

Petitioner Judith Knechtges files this motion *pro se* and asks the Administrative Law Judge to grant a new hearing under Rule 59 of the Rules of Civil Procedure on the following grounds:

1. Any irregularity by which any party was prevented from having a fair trial;

2. Accident or surprise which ordinary prudence could not have guarded against;

3. Newly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial;

4. Insufficient evidence to justify the ruling; and

5. Error in law occurring at the trial and which Petitioner did not object to because Petitioner relied upon Counsel to her detriment.

## RULE 60 MOTION

In addition or in the alternative, Petitioner also moves the Administrative Law Judge under Rule 60 to relieve her from the Final Decision in this matter for the following reasons:

1. Mistake, inadvertence, surprise, or excusable neglect due to the fact the Petitioner relied upon her counsel to present a full record of evidence on

1

Petitioner's behalf and Petitioner's counsel failed to do;

2. The attached affidavit which by due diligence Petitioner could not have provided in time to ask for a new hearing under Rule 59(b) decision (i.e., consists of Petitioner's counsel's refusal to honor Petitioner's request that she present additional witnesses and testimony to support Petitioner's case).

## FACTS WHICH SUPPORT MOTION

These motions are supported by the following facts:

1. Petitioner has learned that her attorney could have subpoenaed witnesses to compel their testimony, but did not do so. Petitioner asked her counsel to present testimony from individuals, including some of the following, which would have supported Petitioner's argument that the reason relied upon by Respondent for not selecting Petitioner was pretextual and not the true reason for her non-selection:

    a. Joseph Prater

    b. Annie Harvey

    c. Sarah Peebles

    d. Sarah Royster

    e. Olushola Metiko

    f. Kim Hurtt

    g. Robbi Lee

    h. Theodis Beck

    i. Erik Hooks

    j. Janet Thomas

    k. Terri Catlett

2. After the hearing, Petitioner went to the OAH website to Hearing Process FAQ's and learned that she had "the following rights in connection with [her] hearing:"

    a. To present evidence on any relevant issue;

    b. To be represented by counsel at her own expense, which she did;

    c. To subpoena witnesses and present documentary evidence;

    d. To cross-examine witnesses; and

    e. Such other rights as are conferred by law and/or rule."

2

3. In addition, the OAH website also provides that "Each party to an administrative hearing has a right to present and question witnesses and to submit or challenge documents regarding the decision. The result of the proceeding is a decision to affirm, modify, or set aside the original agency decision." **Petitioner's attorney called no witnesses on Petitioner's behalf.**

4. According to OAH: "Exhibits are physical/tangible evidence such as papers or documents which are submitted to the Administrative Law Judge as proof of facts presented during the hearing. Exhibits are usually compiled into an exhibit notebook. Two copies of all exhibits must be presented to the Administrative Law Judge and one copy of all exhibits must be presented to the other party involved in the case. The Administrative Law Judge may require you to file a complete copy of all admitted exhibits after the hearing, even if you filed a complete copy prior to the hearing." **Petitioner's attorney did not use any of the exhibits which Petitioner is prepared and provided to Petitioner's counsel. Petitioner's counsel specifically asked Petitioner to create one page evidence documents for the trial binder using a specific format, which Petitioner did. Petitioner's counsel told Petitioner she would use these exhibits in her case.**

5. According to OAH under "Why have an attorney": "No individual is required by the Office of Administrative Hearings to have an attorney." "There are benefits to having an attorney in that attorneys have specialized training in the rules of evidence, rules of civil procedure, presentation of evidence, cross-examination, and, more importantly, the law." "Administrative Law Judges often see persons who try to represent themselves fail to bring key witnesses and evidence and who present their cases poorly. This can affect the result of your hearing. **Petitioner's attorney failed to present key witnesses and evidence especially regarding the pretextual nature of the reasons given by Respondent and this failure clearly affected the result of Petitioner's hearing and failed to represent Petitioner in a manner which OAH's own norms establish as reasonable.**

6. It is consistent with the purpose that the Office of Administrative Hearings was established ("to ensure that administrative decisions are made in a fair and impartial manner to protect the due process rights of citizens who challenge administrative action . . . .") to allow Petitioner to present additional testimony and evidence that was not presented by her attorney and is not in the record.

7. The ALJ made the following findings of fact which could have been given proper context and in some cases refuted had Petitioner's counsel called any witnesses on behalf of Petitioner:

3

| FINDING OF FACT | CONTRARY TESTIMONY |
|---|---|
| Annie Harvey was the only member of the third interview panel who had also served on the prior interview panels for the CEO position.<br><br>Dr. Wilson-Merritt indicated at hearing that the third interview panel did not discuss that Petitioner had been the top candidate in the prior interviews. She explained that in the beginning of the interview process, Ms. Harvey made it clear that 'I've been on previous interview panels, but please don't ask me about that. We're here to do an interview. So, we will judge based off what we see today. | Annie Harvey was not called by Respondent as a witness. Petitioner would have called her to testify that Chad Lovett was not equally or more qualified than Petitioner, that Petitioner was selected by the second interview panel as more qualified than Chad Lovett, and that the panel was told or knew or believed or suspected that Petitioner was not going to be selected for the position so that there was no point in recommending her for the position on the third posting.<br><br>In addition, Dr. Wilson-Merritt's testimony about Annie Harvey's statements are hearsay and should not have been admitted into evidence nor relied upon by the ALJ (as hearsay).<br><br>In addition, Counsel failed to impeach Wilson-Merritt's testimony by introducing evidence about the relationship of the Petitioner as CEO to Wilson-Merritt. While she was in the CEO position, Petitioner was in the process of removing personal cell phones from CPHC providers with the support of the Warden and CPHC Medical Director. The phones were a security risk, not allowed per policy and unnecessary for performing their job in the facility. there was no viable reason to have the phones in the prison. Dr. Wilson-Merritt expressed significant unhappiness regarding the removal of cell phones from physicians and acted on that animus both in the interview process and during her testimony.<br><br>Joe Prater could have testified that Petitioner was selected twice for the position but the DPS leadership above him refused to approve her selection for the position despite her qualifications.<br><br>Mr. Prater could have testified that he told the Petitioner that she was "a victim of doing the right thing "and that he supported her decision to file complaints about removing her from the CEO position. |
| The interview panel interviewed Petitioner and four | All the witnesses **not called** by Petitioner's attorney |

| | |
|---|---|
| other candidates, two external and two internal, for the CEO Position. (Resp. Ex. 4) | could have testified about the process followed, the reason that Petitioner was twice selected for the position by the interview panel, but rejected by DPS management, and Petitioner's qualifications relative to all other applicants for the position in all three applicant pools.<br><br>In addition, several of the witnesses could have testified about retaliation by DPS/Health Services during the appeal of Petitioner's non-selection which was further corroborative evidence of retaliation and pretext. |
| | |
| After interviewing all applicants, Dr. Wilson-Merritt, Ms. Harvey, and Mr. Holbrook discussed the applicants, their interviews, their applications, and what they felt may be beneficial for the Central Prison Hospital facility, including challenges the new CEO would face. (T. pp. 184-185) They "hashed out" whom they thought would be the best candidates and identified their top three candidates. (T. pp. 184-185)<br><br>Dr. Wilson-Merritt agreed that while all three interviewers reached a consensus regarding who were the top three candidates, each person on the panel may not have had those top three in the same order. (T. p. 185) | All the witnesses **not called** by Petitioner's attorney could have testified about the process followed, the reason that Petitioner was twice selected for the position by the interview panel, but rejected by DPS management, and Petitioner's qualifications relative to all other applicants for the position in all three applicant pools.<br><br>In addition, these witnesses could have explained that of the four applicants interviewed, it strained credulity that with Petitioner's qualifications and experience she would have been not even ranked in the top 3 applicants and that after two successful interviews, she would have had such a terrible interview that it would have disqualified her from being in the top 3 applicants. |
| | |

| | |
|---|---|
| The interview panel did not rate Petitioner as one of the top three candidates. In fact, Petitioner and one other candidate received the lowest interview scores; in other words, the panel rated three other candidates higher than Petitioner. (T. pp. 107, 142, 162, 184, 185) (Resp. Exs. 2-4) Based upon the interviews and application materials, the interview panel recommended their top two candidates to Judge Young, the hiring manager for the CEO position. The panel recommended Chad Lovett as their top candidate. (T. pp. 107,l 142 162, 184) (Resp. Exs. 2, 3, 4). | In addition, Petitioner's Counsel failed to request the documentation for the third interview like the documentation provided to Petitioner's counsel by Petitioner for the first two postings of the position, despite Petitioner's request that she obtain that documentation from the Respondent. The evidence would have shown that the candidate selected for in the third selection process was ranked "poor" by the second posting selection panel.<br><br>Annie Harvey could have provided testimony as to whether and how Petitioner's interview on the third posting could have been so significantly poorer as to completely eliminate her from the top 3 candidates, even though the second selection panel chose Petitioner over Chad Lovett in the same applicant pool and yet on the third posting, his qualifications became superior to Petitioner' |
| Even though Mr. Holbrook did not rate Mr. Lovett as his top choice for the CEO position, he thought Mr. Lovett "had clear progressively responsible experience within a healthcare organization managing healthcare facilities . . . And I believe that gave the committee – the panel a great deal of confidence." (T. pp. 162-163)<br><br>Dr. Wilson-Merritt indicated that Mr. Lovett had the leadership experience as a CEO with Kindred Hospitals. She explained that Kindred's setup was very similar to what Central Prison Healthcare Facility does with different departments such as radiology and operations, and multiple specialists come into the facility to see patients.<br><br>In addition, Dr. Wilson-Merritt noted that Mr. Lovett was able to gain JCAHO accreditation for those facilities. (T. p. 180) | As a DHHS physician and executive, , Sarah Peebles MD could have provided testimony regarding Mr. Lovett's qualifications vis a vis Petitioner's and provided ample evidence to rebut the testimony given by Mr. Holbrook and Dr. Wilson-Merritt regarding Mr. Lovett's qualifications. She could also have provided context for the opinion regarding Mr. Lovett's experience at a private hospital versus Petitioner's experience at a state-run hospital, which was Petitioner's experience. Mr. Lovett had no experience with a state-run health care facility of any type.<br><br>Even Respondent's own witness, Mr. Holbrook admitted that he did not recommend Mr. Lovett for the CEO position because he believed that it was highly unlikely that Lovett was given a CEO and Business Director position as an LPN.<br><br>In addition, Lovett's experience with Kindred was not as valuable as Petitioner's because Kindred's setup was not like CPHC. Lovett had no mental health |

6

| | |
|---|---|
| | experience yet CPHC had 216 mental health beds. The Petitioner had been instrumental in setting up the successful implementation of new therapeutic diversion units and restructuring the mental health staff reporting structure.<br><br>Moreover, Dr. Prater, Annie Harvey, and Sarah Peebles could have confirmed the value or lack thereof with experience with JCAHO accreditation as opposed to certification by the National Commission of Correctional Health Care. |
| During the interviews, Mr. Holbrook looked for someone who exhibited "leadership qualities for decisiveness, for clarity of communication, and for vision." (T. p. 158)<br>Both Mr. Holbrook and Dr. Wilson-Merritt described Petitioner's answers during the interview as disorganized, unfocused, and rambling. Mr. Holbrook noted that Petitioner "did not provide concrete examples of things for me to write down." (T. p. 161)<br>At hearing, Mr. Holbrook opined that "other candidates spoke with more clarity and concision. They seemed to present their experiences in a different, better way." (T. p. 162) | Mr. Prater and Ms. Harvey could have provided evidence regarding Petitioner's general regard by the employees at CPHC for her leadership and communication skills and her vision as compared to other individuals in that position previously.<br><br>Ms. Harvey and Dr. Peebles could have provided testimony regarding Petitioner's interview performance during her previous interviews for the position.<br><br>Petitioner had detailed interview documents which her counsel refused to use which would refute the statement from Wilson-Merritt that the benchmarks were not answered.<br><br>Lovett's interview answers as shown in the documentary evidence which Petitioner's counsel failed to obtain from Respondent for the third interview would have provided that his responses were significantly vacant of relevant content, yet he was given an average rating. |
| Dr. Wilson-Merritt thought Petitioner was knowledgeable and had "a ton of education." She thought Petitioner provided very detailed information during her interview, but such information did not necessarily pertain to the bigger picture and answer the benchmarks of the interview questions. (T. p. 188) | Dr. Peebles, Mr. Prater, and Ms. Harvey could have provided testimony regarding Petitioner's actual experience while performing the duties of the CPHC CEO and about her performance during previous interviews and how it compared with her interview performance for the third posting.<br><br>In addition, Wilson-Merritt's hiring memorandum contained incorrect and misleading information and Petitioner's counsel could have questioned Wilson-Merritt about her lack of experience in hiring hospital healthcare administrators and her hospital management experience was also very limited. |

| | |
|---|---|
| Likewise, in reviewing Petitioner's application, Dr. Wilson-Merritt noticed that "there were a lot of words that were not concise thoughts." (T. p. 199) As a "CEO, you should be able to formulate your thoughts and be concise when you communicate with your staff. So, neither on paper nor in her interview was that demonstrated." (T. p. 199) | Dr. Peebles, Mr. Prater, and Ms. Harvey could have provided testimony regarding Petitioner's actual experience while performing the duties of the CPHC CEO and about her performance during previous interviews and how it compared with her interview performance for the third posting. Specifically, Ms. Harvey and Ms. Peebles could have provided evidence regarding a specific comparison of Petitioner's and Mr. Lovett's application and Ms. Harvey could have provided evidence about Petitioner's performance in previous interviews and in her interview on the third posting. |
| | |
| Judge Young made the initial decision to hire Chad Lovett based on the application materials, the interviewers' score sheets of each applicant's interview, and a memorandum detailing why the panel recommended Mr. Lovett for the CEO position.<br><br>Thereafter, Judge Young conferred with and obtained approval from Respondent's Secretary, Erik Hooks, to offer Chad Lovett the CEO position. (T. pp. 121, 122, 156, 165) (Resp. Ex. 2, 3, 4). | Judge Young stated he hired Lovett because of the application materials: However, Petitioner's counsel failed to show that Lovett's application was incomplete. Per the posting, "To receive credit for all of your work history and credentials, you must list the information on the State of North Carolina application in the Education and Work Experience sections of the applications form. Any information omitted cannot be considered for qualifying credit". In addition, witnesses could have been called to explain why Lovett's application appeared to have been altered after the fact given that his major appeared to have been changed in ink.<br><br>Judge Young stated that he did not select the Petitioner because "mismanagement of that facility has the potential to create large liabilities." Petitioner's counsel failed to cross-examine him about Petitioner's extensive experience during her time as CEO in correcting gross CPHC mismanagement caused by the prior CEO who had over 20 years of experience in Health Services.<br><br>Petitioner's counsel could have questioned Judge Young and if called, also Secretary Hooks, about the reasons Petitioner was rejected on two previous occasions, the second of which she competed directly with Mr. Lovett.<br><br>Mr. Prater could also have provided evidence regarding the efforts of other individuals (Terri Catlett and Janet Young) involved in the matters about which Petitioner "blew the whistle" constantly agitated for Petitioner's removal as interim CEO which would have supported a cat's paw theory of liability. |

| | |
|---|---|
| Mr. Lovett was chosen as the top candidate because of his master's degree in Healthcare Administration, his extensive hospital CEO experience, and his experience as a licensed practical nurse ("LPN") administering healthcare in a correctional setting. Mr. Lovett had over 9 ½ years' experience as a hospital CEO. Five of those years were with Kindred Hospitals and included three separate Kindred Hospital facilities. Mr. Lovett took all three of those facilities through the accreditation process with the Joint Commission Accreditation of Healthcare Organizations ("JCAHO"). One of those facilities was granted its initial accreditation under Lovett's leadership. (T. pp. 121, 122, 156, 165) (Resp. Exs. 2, 3, 4). Mr. Lovett also worked for nine years with the Federal Bureau of Prisons including working as a licensed practical nurse. | Petitioner's educational background was far superior to Mr. Lovett's.<br><br>Mr. Lovett's experience as a hospital CEO was at facilities which were not correctional in nature, were much smaller than CPHC and were acute long-term care facilities, not long-term care facilities.<br><br>DPS correctional healthcare facilities are more properly evaluated by the American Correctional Association (ACA) and per their current strategic plan, the commitment of the Respondent is to ACA accreditation not The Joint Commission (TJC).<br><br>Federal Bureau of Prisons (BOP) direct health care experience as an LPN provides no administrative experience nor any experience with State correctional facilities.<br><br>The CEO posting preferred previous executive-level experience at a correctional facility, Lovett did not have this. Petitioner not only showed exemplary proven ability to manage the healthcare complex, but she also had extensive statewide experience coordinated services across the state with all levels of healthcare staff and custody, including demonstrated knowledge of DPS correctional policies and procedures; Lovett had none. |

| | |
|---|---|
| While Petitioner had a master's degree in Health Services Management and Policy, her CEO experience was limited to the 2 ½ years that she acted in the Interim CEO position at Central Prison Hospital. Between 1981 and 2010, Petitioner's experience consisted of a territory manager for a pharmaceutical company and a pharmacist. She had no health care administrative work experience between 1981 and 2010 when she became a pharmacy director with Respondent's Central Pharmacy. Her work experience was limited to being a pharmacist and six years as a pharmacy director. As a result, Petitioner had significantly less experience as a CEO as compared to the chosen candidate, Chad Lovett.<br><br>Petitioner received a pay raise of approximately $45,000 in that position. | Mr. Lovett's experience working 9 years at the Federal Bureau of Prisons in a non-supervisory LPN position providing no administrative experience is far less than Petitioner's 12 years of administrative experience and since 2010, direct DPS administrative experience, with almost 3 years successfully performing, by all accounts such as performance reviews and factual accomplishment, the actual position for which she was rejected.<br><br>Respondent failed to mention that the Petitioner did not ask for the increase; the previous CEO (male) who was making approximately 170,000 a year and was "well-qualified" grossly mismanaged CPHC for 5 years.<br><br>After she replaced him as CEO, Petitioner resolved his financial and managerial problems which cost the tax-payers hundreds of thousands of dollars. Despite this achievement, Petitioner received significantly less salary than the previous administrator, and did not request more.<br><br>Lovett also received over $160,000 a year yet had no correctional management experience, no correctional accreditation experience and most importantly no mental health experience. |
| | |

8.   The above findings of fact were relied upon for the following conclusions of law:

| CONCLUSION OF LAW | ALTERNATIVE CONCLUSION OF LAW |
|---|---|
| | |
| In this case, even if Petitioner is able to establish a *prima facie* case of unlawful retaliation for identifying gross mismanagement within Respondent, she cannot establish that the Department's lawful reason for choosing another candidate was pretextual. | Even if Respondent provided a facially legitimate non-discriminatory and non-retaliatory reason for Petitioner's third non-selection for the CEO position, Respondent did not provide a legitimate non-discriminatory and non-retaliatory reason why Petitioner was rejected on two previous occasions after having been the unanimous choice of two previous selection panels.<br><br>Petitioner's Counsel did not present any documentation or testimony regarding the first two non-selection events which would have shown that Respondent's reasons for not selecting Petitioner were pretextual. |
| | |

| | |
|---|---|
| Respondent presented a legitimate nondiscriminatory reason for selecting Chad Lovett for the CEO position. As set forth above, Respondent chose Mr. Lovett because he was substantially more qualified than Petitioner, had extensive years of hospital CEO experience, and provided superior interview responses to the panel's interview questions. Petitioner lacked the extensive hospital CEO experience that the Department was seeking. Rather, Petitioner, with the exception of two years, had no experience with hospital administration but worked as a pharmacist and had six years as a pharmacy director. Petitioner was significantly less experienced as a CEO than Chad Lovett. | Although Respondent's witnesses Mr. Holbrook and Dr. Wilson-Merritt articulated a legitimate nondiscriminatory reason (i.e., Petitioner's interview performance as compared to Mr. Lovett's), this reason was not corroborated by Ms. Harvey, but Petitioner's counsel failed to present evidence from Ms. Harvey. Mr. Prater also found that Petitioner's ability to articulate her vision and understanding of the needs of the CPHC was more than acceptable which is why she served in the position as interim for so long.<br><br>Petitioner's Counsel could have cross-examined Judge Young, Doug Holbrook, and Secretary Hooks, and Anita Wilson-Merritt regarding the use of experience in the selection process for other position within DPS and shown that that reason given for Petitioner's non-selection was pretextual because it was not applied to other positions. |
| | |
| Petitioner failed to present sufficient, credible evidence to prove that the interview panel's selection of Chad Lovett, and Judge Young's determination that Chad Lovett was more qualified, was pretextual. That is, Petitioner failed to present credible evidence that the true motivation of the interview panel and Judge Young in hiring Chad Lovett was in retaliation for Petitioner's whistleblowing activities. *See, e.g., Miller*, 167 N.C. App. 168, 605 S.E.2d 477 ("A plaintiff's own assertions of discrimination are insufficient to overcome an employer's legitimate, nondiscriminatory reason for discharge."); *DeJarnette v. Corning*, 133 F.3d 293, 299 (4th Cir. 1998) (noting in citation that an "employee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination"). | Respondent failed to present a legitimate non retaliatory reason for rejecting Petitioner on two previous occasions prior to her rejection by Judge Young who replaced Joe Prater.<br><br>The Final Decision by Judge Lassiter stated Petitioner did not show by a preponderance of evidence that the Respondent's stated reasons for Petitioner's non-selection were pretextual and noted specifically that Petitioner's case relied on Petitioner's testimony alone.<br><br>The reasons given for Judge Young's rejection of Petitioner might have the result of his belief that Mr. Lovett had better credentials, but the testimony of Mr. Prater, Ms. Harvey, and Dr. Peebles were that Petitioner's credentials and experience were superior to Mr. Lovett's and had been found to be so on a previous occasion.<br><br>Moreover, testimony by Mr. Prater, Ms. Young, and Ms. Catlett would have demonstrated the cat's paw theory of retaliation: that DPS through Judge Young and Secretary Hooks were liable for illegal retaliation when individuals like Ms. Catlett and Ms. Thomas with improper bias and misinformation were allowed to influence the selection process by influencing others to reject Petitioner on multiple occasions. |
| | |
| Given that Petitioner was selected as the most qualified candidate during the first two interviews, but not even rated in the top three choices by the third | This conclusion is prima facie evidence of the disadvantage to Petitioner's ability to support her allegations resulting from Petitioner's attorney's |

| interview panel, Petitioner's evidence created some inference of retaliation by Respondent in selecting Chad Lovett, instead of Petitioner, for the CEO position. However, the preponderance of Petitioner's evidence was based upon her own inferences and unsupported speculation. No other witnesses testified at the hearing in support of Petitioner's speculative opinions. While Petitioner attempted to meet her burden with conclusory allegations, she did not establish that Respondent's stated reason for choosing another candidate for the CEO position, and not Petitioner, was false or a pretext for illegal retaliation based on Petitioner's earlier reports of gross mismanagement. See Fatta v. M & M Properties Management, Inc., 221 N.C. App. 369, 727 S.E.2d 595 (2012). | failure to call any of the witnesses identified by Petitioner. The ALJ could not have found that "no other witnesses testified at the hearing in support of Petitioner's speculative opinions" had Petitioner's attorney called witnesses on behalf of Petitioner. |
|---|---|

9. Petitioner's attorney did not "have all evidence to be presented, both oral and written, available on the date for hearing" as provided in 26 NCAC 03 .0120(a) and Petitioner was disadvantaged by her counsel's failure to do so.

10. The Rules of Civil Procedure shall apply in contested case hearings. 26 NCAC 03.0101(a).

11. A party can apply to an Administrative Law Judge by motion. 26 NCAC 03. 0115(a).

12. The Administrative Law Judge has the power and duty under G.S. 150B-33 and 150B-34 to make orders as deemed appropriate. 26 NCAC 03.0105(5). In addition, the Administrative Law Judge has the duty "to make a complete record" and to ensure the "full development of material facts in the case." 26 NCAC 03.0105(4).

## CONCLUSION

Petitioner respectfully requests that the Administrative Law Judge grant Petitioner's Motion under Rule 59 and/or Rule 60 and provide Petitioner an opportunity to present evidence, either through new counsel or pro se, which she was not given the opportunity to present at the hearing in which she was represented by her previous counsel and the lack of which evidence the Administrative Law Judge noted and relied upon in finding that Petitioner did not provide sufficient evidence to prove that Respondent's stated reasons for non-selection of Petitioner were pretext for illegal retaliation..

JUDITH KNECHTGES, pro se
Address: 211 Coltsgate Drive
Cary, NC, 27518
Tel: (919) 812-2226
Email: jeknec25@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that, on the date shown below she sent the foregoing document to the persons named below at the addresses shown below, by electronic service as defined in 26 NCAC 03 .0501(4), or by placing a copy thereof, enclosed in a wrapper addressed to the person to be served into an official depository of the United States Postal Service:

Norlan Graves
North Carolina Department of Justice
ngraves@ncdoj.gov
Attorney For Respondent

This the 23rd day of March 2021.

_Judith Knechtges_
JUDITH KNECHTGES, pro se