THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH
CAROLINA WESTERN DIVISION

No. 5:21-CV-00225-BO

| | | |
|---|---|---|
| JUDITH KNECHTGES, | ) ) ) | **MEMORADUM OF LAW IN** |
| Plaintiff, | ) ) | **SUPPRORT OF** **DEFENDANTS' MOTION FOR** |
| v. | ) ) | **SUMMARY JUDGMENT** |
| NC DEPARTMENT OF PUBLIC SAFETY, et al., | ) ) ) | |
| Defendants. | ) | |

NOW COMES Defendants, NC Department of Public Safety, Eric Hooks, Janet Thomas and Terri Catlett ("Defendants") appearing by and through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully submit this memorandum in support of their motion for summary judgment. In support of the motion for summary judgment, Defendants state the following:

## STATEMENT OF THE CASE

On May 17, 2021, Plaintiff Judith Knechtges ("Plaintiff" or "Knechtges") filed a complaint in this case alleging that she was discriminated against by Defendants by failing to promote her to the Central Prison Hospital CEO position based on her race, sex and age. [D.E. 1 at 1] Plaintiff also alleges that Defendants retaliated and created a hostile work environment after she complained about discrimination. *Id at* 3. Plaintiff brings allegations against Defendants in their

individual and official capacities under Title VII of the Civil Rights Act (41 U.S.C 2000e et seq.) ("Title VII"), the Age Discrimination in Employment Act (29 U.S.C 623 et seq) ("ADEA") as well as violations of the equal protection and free expression under the United State Constitution and also state law claims for also violations of equal protection and free expression under the North Carolina Constitution. *Id* at 5.

Plaintiff is still employed with the State and has been working continuously for the State since 2003. Plaintiff asks the Court to issue an injunction directing Defendant Hooks to hire her for the CEO position. Plaintiff also asks that "the Defendant" be enjoined from discriminating against her on the basis of sex and age in the terms and conditions of employment as well as making her whole and providing monetary compensation for the alleged wrongdoings. *Id.*

On August 6, 2021, Defendants filed their Answer to Plaintiff's Complaint. [D.E. 8] On September 16, 2021, the Court issued a Scheduling Order. [D.E. 11] On September 24, 2021, Undersigned counsel filed a Notice of Substitution of Counsel. [D.E.12]

On March 8, 2022, Plaintiff filed a motion to extend the case management deadlines. [D.E. 16] On June 27, 2022, Defendants file a motion to extend the case management deadlines, with consent of Plaintiff's counsel. [D.E. 18]

On July 28, 2022, the Parties filed a consent motion to substitute the mediator, which was granted by the Court on August 11, 2022. [D.E. 20,21] On September 27, 2022, Defendants filed a Motion for Extension of Time of Case Management Deadlines which was granted by the Court.

On or around October 5, 2022, undersigned counsel received Plaintiff's responses to Defendant's discovery, which included over four thousand one hundred and fifty five pages of documents produced (4,155) as well as responses to the interrogatories, and request for production of documents. Since Plaintiff has been an employee of DPS, much of the production were documents and information generated by DPS. On October 7, 2022, Plaintiff filed a Motion to Compel Defendants to Respond to Plaintiff's Discovery Request. [27]

On October 18, 2022, Defendants filed their Motion for Protective Order with the Court regarding entering and Protective Order related to the production of confidential DPS documents. [D.E. 29 ] On October 21, 2022, Undersigned Counsel finalized and served responses to Plaintiff's interrogatories and requests for production of documents on counsel for the Plaintiff including 3,942 pages of Bates stamped documents, and filed Defendants' Response to Plaintiff's Motion to Compel. [D.E. 32]

A Motion and supporting Memorandum of Law seeking to Disqualify Counsel was filed by Defendants on November 18, 2022, along with a Motion to Stay Proceedings pending resolution of the motion. [D.E. 33, 34, 35] Counsel for the Plaintiff responded to the Motion to Disqualify Counsel on November 22, 2022. [D.E. 36] The Protective Order was entered by Judge Boyle on January 3, 2023. [D.E. 37]

On March 16, 2023, counsel for the Plaintiff filed a Second Motion to Compel. [D.E. 41] On April 25, 2023, Defendants filed a motion in opposition to Plaintiff's Second Motion to Compel. [D.E. 48] On May 10, 2023, Defendants filed a

final motion to extend the deadline to file dispositive motions setting the deadline for May 17, 2023. [D.E. 51, 53]

**STATEMENT OF FACTS**

Plaintiff, is a career status State employee and is currently employed with the North Carolina Department of Adult Correction ("DAC", "Department" or the "Agency") Prior to January 1, 2023, Plaintiff's same position with the State of North Carolina was with the North Carolina Department of Public Safety ("DPS", "Department" or the "Agency") On January 1, 2023, the North Carolina General Assembly created DAC pursuant to North Carolina Session Law 2021-180 and established it as a single unified cabinet-level department which is separate from DPS. As part of this legislative action, some DPS employees were transferred to DAC to form and support the newly established department. Plaintiff's position was transferred to DAC since it involves providing medical support to the prisons and offenders across the state.

On April 22, 2016 Plaintiff was appointed by the director of DPS to act as the interim Acting Chief Executive Officer for Central Prison Hospital for DPS. [Exhibit 1] The CEO Position is an except management position not subject to protection under Article 1, Chapter 126, of the North Carolina Human Resources Act. with the Agency Head being able to select whoever is most qualified.

The CEO assignment was temporary following the unexpected departure of the prior CEO. At the time of the temporary appointment, Plaintiff was employed as the Pharmacy Director at Apex Central Pharmacy and had been working with the state

in various capacities since approximately 2003.

**Posting and Interviewing for CEO Position**

On August 7, 2018, the Department posted the "Permanent" Chief Executive Officer for Central Prison Hospital. [Exhibit 2]. The Department had previously posted the CEO Position two times. [Exhibit 7.1] The position was not filled through either of these postings. *Id.*

The posting for the CEO position notified all applicants that the position was an exempt managerial position not subject to protection under Article 1, Chapter 126, of the North Carolina Human Resources Act. [Exhibit 2, 8]. The posting also directed all prior applicants to resubmit their materials [Exhibit 2]

The job posting lists the following minimum education and experience requirements, "Master's degree in Hospital Administration, Health Care Administration, or a clinical Human Resources field, AND six (6) years of hospital administration experience" or "Bachelor's degree in health care or business administration AND eight (8) years of hospital administration experience" or "An equivalent combination of education and experience." *Id.*

On August 19, 2018, Plaintiff applied for the CEO Position. [Exhibit 3]. While Plaintiff has a Master's degree in Health Services Management and Policy from 1981, she only has 2.5 years of experience with hospital administration. *Id.* Plaintiff's other experience is limited to being a pharmacist and six years as a pharmacy director as opposed to a hospital administrator. *Id.*

On October 2, 2018, Plaintiff was interviewed for the CEO Position. [Exhibit

4]. In addition to Plaintiff, the Department interviewed four other candidates, two external and two internal. *Id.* The interview panel consisted of Anita Wilson- the Medical Director for the Division of Prisons, Annie Harvey- who at the time was the Deputy Director of Operations for the Division of Prisons, and Doug Holbrook- Chief Financial Officer for the Department. [Exhibits 4, 5, 7, 7.1].

Plaintiff and one other candidate had the lowest interview scores. Three other candidates obtained better interview scores than Plaintiff. [Exhibit 4]. (noting Plaintiff and one other candidate received a Below Average score from one of three interviewers and only average scores from two other interviewers).

Two top candidates were recommended by the interview panel based on the interviews and application materials. Chad Lovett was the recommended top candidate. [Exhibit 4,5,7,7.1].

Reuben Young, who at the time was the Interim Chief Deputy Secretary, was the hiring manager and made the initial decision to hire Chad Lovett based on the application materials and information provided by the interview panel, including a memorandum detailing Mr. Lovett's superior qualifications. [Exhibit 7]. He then obtained approval from DPS Secretary Erik Hooks. *Id.*

**Award of CEO Position to Mr. Lovett**

Mr. Lovett was chosen as the top candidate because of his Masters in Healthcare Administration, his extensive hospital CEO experience and his experience as a nurse administering healthcare in a correctional setting. [Exhibit 5]. Mr. Lovett has over 9 years of experience as a hospital CEO. *Id.* Five of those years

were with one company and included three separate facilities. *Id.* Mr. Lovett took all of those facilities through the accreditation process with the Joint Commission Accreditation of Healthcare Organizations ("JCAHO") with one of the facilities being granted its initial accreditation under his leadership. *Id.*

Mr. Lovett has specific experience with repairing failing community physician support relationships as well as recruiting and reengineering medical staff to serve the provided mission. *Id.* He had proven himself to be fiscally responsible by increasing efficiency and decreasing expenditures within his facilities. *Id.* References pointed out that Mr. Lovett is self-motivated and has the unique ability to drive efficiency and teamwork. *Id.*

Mr. Lovett was offered and accepted the CEO Position. [Exhibit 7]. Plaintiff was not selected for the position because she was not the most qualified. [Exhibit 7].

It is questionable whether Plaintiff even meets the minimum education and experience requirements set forth in the job posting. Plaintiff 's CEO experience was limited to the 2.5 years that she acted in the interim CEO position at Central Prison Hospital, and her Master's degree was obtained over thirty years ago with no health care administrative work experience between 1981 and 2010, when she became a pharmacy director. [Exhibit 7].

Instead, between 1981 and 2010, Plaintiff's experience was limited to being a territory manager for a pharmaceutical company and a pharmacist. *Id.* Plaintiff has significantly less experience as a CEO as compared to the chosen candidate, Chad Lovett. *Id.*

**Plaintiff's Return to Her Permanent Position and Initial Complaint**

On December 12, 2018, Appellant-Plaintiff was notified that her temporary assignment as Acting CEO for Central Prison Hospital was ending and that she was being returned to her permanent position of Pharmacy Director at Apex Central Pharmacy. [Exhibit 9].

On February 22, 2019, Plaintiff filed a complaint in the North Carolina Office of Administrative Hearings ("NC OAH") alleging that the Department discriminated against her for not selecting her for the CEO Position. [Exhibit 10]. *Knechtges v. NC Department of Public Safety*, 19 OSP 01028 -(hereinafter referred to as the "First OAH Contested Case").

Plaintiff alleges that the Department did not provide her with promotional priority and that they retaliated against her in violation of the Whistleblower Act, N.C.G.S. Chapter 126, Article 14, when they did not hire her for the CEO Position. *Id.*

In the Initial Complaint/Petition filed in NC OAH , Plaintiff states:

> [Plaintiff] is a career employee who applied for a promotion and was denied promotional priority in favor of a candidate who was not part of the State government workforce lacking substantially equal job related qualifications. Additionally, [Plaintiff] engaged in activities protected by N.C.G.S. 126-84 and because of those activities and reports [the Department] took adverse employment action against by denying [Plaintiff] a promotion in violation of N.C.G.S. 126-85. By taking these actions [the Department] deprived [Plaintiff] of property and substantially prejudiced [Plaintiff's] rights and additionally (1) Exceeded its authority or jurisdiction, (2) Acted erroneously, (3) Failed to use proper procedure, (4) Acted in violation of Constitutional provisions (5) Failed to act as required by law or rule, and/or (6) Was arbitrary, and capricious, and/or abused its

discretion. [Plaintiff] demands promotion, back pay, costs, and attorney's fees, as well as treble damages and injunctive relief for a willful violation of the Whistleblower Act. DPS refused to process [Plaintiff's] internal grievance; accordingly this petition is filed under the authority of Hunt v. DPS.

*Id.*

## Defendant's Motion for Summary Judgment and Order by the Court

On April 3, 2019, the North Carolina Attorney General's Office filed a Motion for Summary Judgment on behalf of the Department in NC OAH court. [Exhibit 11]. On September 11, 2019, the Court entered an Order granting the Department's Motion for Summary Judgment in part. [Exhibit 12].

The Court found that Plaintiff was not entitled to promotional priority consideration because the CEO position for which Plaintiff applied was an exempt managerial position and as a result, N.C. Gen. Stat. 126-7.1(e) did not apply to the position. *Id.* The Order denied summary judgment as to Plaintiff's claim that Plaintiff-Appellant failed to establish a whistleblower retaliation claim. *Id.*

On September 25, 2019, Plaintiff-Appellant filed a Motion for Relief from Judgment pursuant to sections (1) and (6) of N.C. Gen. Stat. 1A-1, Rule 60 as to the September 11, 2019 Order granting Summary Judgment for Defendants-Appellee. [Exhibit 13].

On October 1, 2019, Plaintiff filed a voluntary dismissal of her case 19 OSP 01028 without prejudice and reserved the right to refile within one year. [Exhibit 14]. Plaintiff filed this dismal prior to receiving a ruling from the OAH court regarding her Motion for Relief from Judgment. *Id.*

**Second NC OAH Case**

On May 22, 2020, Plaintiff re-filed her complaint in NC OAH alleging the exact same claims as previously alleged in her initial NC OAH complaint filed in February 2019. [Exhibit 15]. *Knechtges v. NC Department of Public Safety*, 20 OSP 02124-(hereinafter referred to as the "Second OAH Contested Case").

On August 19, 2020, the Department through the Attorney General's Office filed a Motion to Dismiss Plaintiff's claim regarding promotional priority consideration based upon *res judicata* and citing the Motion for Summary Judgment and the Court's Order in the previously filed NC OAH case. [Exhibit 16].

On August 28, 2020, the Parties had a full trial of this matter before the Administrative Law Judge Melissa Owens Lassiter. Prior to the trial, the Court heard the Motion to Dismiss and took it under advisement pending hearing the trial evidence in the matter. [Exhibit 17].

After hearing arguments at trial, the Judge Lassister granted the Department's Motion to Dismiss based on *res judicata* as to Plaintiff's claim regarding promotion priority. *Id.*

On February 25, 2021, Judge Lassister entered a Final Decision finding that the Department did not retaliate against the Plaintiff, in violation of N.C. Gen. Stat 126-34.02(b), 126-84, and 126-85, by selecting another applicant for the Hospital Chief Executive Officer Position and denying Plaintiff a promotion to that position. *Id.*

The Court also found that Plaintiff failed to prove by a preponderance of the

evidence that the Department retaliated against her, in violation of the Whistleblower Act, N.C. Gen. Stat. 126-84, 126-85, and N.C. Gen. Stat. 126-34.02(b) by selecting another applicant. *Id.*

The Court found that the Department presented a legitimate nondiscrminatory reason for selecting Chad Lovett for the CEO Position . The found that the Department chose Mr. Lovett because he was substantially more qualified than Plaintiff, had extensive years of hospital CEO experience, and provided superior interview response to the panel's interview questions. *Id.* Plaintiff lacked the extensive hospital CEO experience that the Department was seeking. Rather, Plaintiff, with the exception of two years, had no experience with hospital administration but worked as a pharmacist and had six years as a pharmacy director. Plaintiff was significantly less experienced as a CEO than Chad Lovett. *Id.*

The Court found that Plaintiff cannot establish that the Department's lawful reason for choosing another candidate was pretexual. *Id.*

The Court in their Order went through the burden-shifting proof scheme developed by the United States Supreme court in *McDonnell Douglas Corp.* ultimately finding that there was no causal connection between the protected activity and the adverse action taken against Plaintiff. *Id.*

On March 23, 2021, Plaintiff filed a motion requesting a new trial and to relieve Plaintiff from the final decision pursuant to Rule 59 and Rule 60 of the Rules of Civil Procedure. [Exhibit 18]    On April 20, 2021, the NC OAH Court denied Plaintiff's Motions filed under Rule 59 and Rule 60. [Exhibit 19]

On April 27, 2021, Plaintiff filed a Notice of Appeal to the North Carolina Court of Appeals of the February 25, 2021 Final Decision of the NC OAH Court as well as the April 20, 2021 Order denying Plaintiff's Motions under Rule 59 and 60. [Exhibit 20]

On February 7, 2023, the North Carolina Court of Appeals issued an unpublished opinion in the matter, after receiving briefs from the Parties, affirming the trial court's order. [Exhibit 21]    The opinion states [Plaintiff] "seeks what any losing party would seek, another opportunity to establish a prima facie case against the opposing party. [Plaintiff] seeks a second opportunity to present evidence to the OAH that was available during the hearing, although her counsel did not present it. However, this desire hardly amounts to an extraordinary circumstance and essentially is a request for a "second bite at the apple.". [Exhibit 21]

**Federal Litigation**

Although the OAH Court issued their Final Judgment on February 25, 2021, on May 17, 2021 Plaintiff filed a complaint in this federal action alleging that that she was discriminated against by Defendants by failing to promote her to the Central Prison Hospital CEO position based on her race, sex and age. [D.E. 1] Plaintiff also alleges that Defendants retaliated and created a hostile work environment after she complained about discrimination. *Id at* 3.

Plaintiff brings allegations against Defendants under Title VII of the Civil Rights Act (41 U.S.C 2000e et seq.) ("Title VII"), the Age Discrimination in Employment Act (29 U.S.C 623 et seq) ("ADEA") as well as violations of the equal

protection and free expression under the United State Constitution and also state law claims for also violations of equal protection and free expression under the North Carolina Constitution. *Id* at 3-5

Plaintiff brings seven claims against all four Defendants, suing them in their individual and official capacities. *Id.* Plaintiff's first claim alleges a violation of Title VII for not selecting her for the CEO position because of her gender alleging sex discrimination. *Id.* Plaintiff's second claim alleges a violation of the ADEA for not selecting her for the CEO position because of her age and alleging age discrimination. *Id.* Plaintiff's third claim alleges she was retaliated against and was subjected to a hostile work environment because she protested the selection of a younger male applicant for the CEO position. *Id.*

Plaintiff's fourth claim alleges that by not being selected for the CEO position she was treated differently from other male applicants thus depriving her of her right to Equal Protection under the U.S. Constitution. *Id.*

Plaintiff's fifth claim alleges that by denying her for the CEO position, and subjecting her to a hostile work environment violated her right to free speech under the U.S. Constitution. *Id.*

Plaintiff's sixth claim alleges that by not being selected for the CEO position, she was treated differently than other male applicants which deprived her of her right to equal protection under the North Carolina Constitution. *Id.*

Plaintiff's seventh claim alleges that by denying her for the CEO position, and subjecting her to a hostile work environment her right to free speech under the North

Carolina Constitution was also violated. *Id.*

As part of her Prayer for Relief, Plaintiff asks the Court to issue an injunction directing Defendant Hooks to hire her for the CEO position. Plaintiff also asks that "the Defendant" be enjoined from discriminating against her on the basis of sex and age in the terms and conditions of employment as well as making her whole and providing monetary compensation for the alleged wrongdoings. *Id.*

**Allegations against Defendants in her Complaint**

In Plaintiff's Complaint she alleges that in 2015 she discovered numerous anomalies at CPHC pertaining to lack of controlled substances accountability. [D.E. 1 at 25] Plaintiff states that she reported these issues to management. *Id* at 27.

In April 22, 2016, Plaintiff was appointed as the Interim CEO of Central Prison Hospital. *Id* at 30. Plaintiff alleges that Defendants Thomas and Catlett were not happy with Plaintiff's new role as interim CEO. *Id* at 37. Plaintiff also bring multiple allegations against Debra Fitzgerald, however she is not a defendant in this lawsuit.

Plaintiff alleges that Defendants Catlett and Thomas "worked relentless to undermine Plaintiff's position as CEO and to sabotage her ability to manage the facility" *Id* at 42. Plaintiff alleges that Defendants Catlett and Thomas's behavior changed drastically when Plaintiff because the Interim CEO. Plaintiff includes supposed examples of this including but not limited to alleging "Catlett not coming to meet with Plaintiff", "making negative comments about the cleanliness of the facility", "Catlett ignoring Plaintiff", "giving Plaintiff the silent treatment", "excluding her at lunch", as well as several examples of "rumors" or things Plaintiff

heard from third people that Defendants Catlett and Thomas allegedly said, etc. *Id.* at 43-56

Plaintiff lays out the alleged successes she had while serving as Interim CEO. *Id.* at 57-79. Plaintiff also lays out in her complaint her version of the hiring process for the permanent CEO Position. *Id.* at 80-111

Plaintiff alleges that when she returned to her regular position at Apex Central Pharmacy after being Interim CEO at Central Prison Hospital she found "many staff to be cold and distant". *Id* at 118. Plaintiff also alleges that upon returning to her regular position she went out on leave, decided to seek legal advice and was advised by an attorney to file a grievance alleging that she was a whistleblower and that she had been denied promotion in violation of the State employee preference in promotion law. *Id.* at 119. Her attorney, allegedly told her not to file a grievance alleging discrimination or it would stop the attorney's representation. *Id.* Plaintiff alleges that after returning from the first leave, "Defendant Thomas and Fitzgerald treated Plaintiff on the best of occasions with indifference and on the worse of occasions with hostility." *Id* at 120.

Plaintiff alleges that Thomas had significantly changed Plaintiff's job duties. Excluded her from meeting with them, excluded from email and generally treated in a hostile manner. *Id.*

**Defendant Terri Catlett**

Defendant Terri Catlett ("Catlett") was employed with the North Carolina Department of Public Safety as the Director of Healthcare Administration during the

relevant times. [Catlett Decl.] In her role as Director of Healthcare Administration, she had absolutely no involvement with the hiring process for the CEO Position, including whether Ms. Knechtges was selected for the job or another candidate was chosen. *Id.* When Ms. Knechtges left the role as Interim CEO and returned to her regular position, she was not in her chain of command. *Id.*

Catlett did not change her behavior towards Ms. Knechtges while she served as the Interim Chief Executive Officer at the Central Prison ("Interim CEO") or when she returned to Central Pharmacy from being relieved of that interim post in early 2019. *Id.* Catlett did not do or say anything that could be construed as retaliation against Ms. Knechtges during her tenure as Interim CEO or when she returned to the Apex Pharmacy. *Id.* This includes but is not limited to excluding her in lunch plans and social outings with co-workers as she alleges. Catlett also did not retaliate by changing her job duties or excluding her from meetings and emails. *Id.* At no time ever did Catlett make inappropriate or offense comments, jokes, or asked question to or about Ms. Knechtges regarding her race, national origin, sex or age as alleged. *Id.*

Ms. Knechtges did discuss with Catlett their prior working relationship and Plaintiff shared rumors she heard of comments purportedly made by me which were completely not true. *Id.* At no time did Catlett treat Ms. Knechtges differently due to her membership in a particular protected class or class status. *Id.*

Catlett believes possibly the only meetings and communications Ms. Knetchges may not have been brought into were pertaining to projects that she was

not involved. *Id.* At no time did Catlett give Ms. Knetchges, the "silent treatment" or exclude her from lunch as she alleges.

**Defendant Janet Thomas**

Defendant Janet Thomas ("Thomas") was employed with the North Carolina Department of Public Safety as the Director of DPS Pharmacy Services but has since retired from State Employment. [Thomas Decl.] In her role as Director of DPS Pharmacy Services, she had absolutely no involvement with the hiring process for the CEO Position, including whether Ms. Knechtges was selected for the job or another candidate was chosen. *Id.*

Thomas did not change her behavior towards Ms. Knechtges while she served as the Interim Chief Executive Officer at the Central Prison ("Interim CEO") or when she returned to Central Pharmacy from being relieved of that interim post in early 2019. *Id.* Catlett did not do or say anything that could be construed as retaliation against Ms. Knechtges during her tenure as Interim CEO or when she returned to the Apex Pharmacy. *Id.* This includes but is not limited to excluding her in lunch plans and social outings with co-workers as she alleges. Thomas also did not retaliate by changing her job duties or excluding her from meetings and emails. *Id.* At no time ever did Thomas make inappropriate or offense comments, jokes, or asked question to or about Ms. Knechtges regarding her race, national origin, sex or age as alleged. *Id.*

Ms. Knechtges did discuss with Thomas their prior working relationship and Plaintiff shared rumors she heard of comments purportedly made by me which were

completely not true. *Id.* At no time did Thomas treat Ms. Knechtges differently due to her membership in a particular protected class or class status. *Id.*

Thomas believes possibly the only meetings and communications Ms. Knetchges may not have been brought into were pertaining to projects that she was not involved. *Id.* At no time did Thomas give Ms. Knetchges, the "silent treatment" or exclude her from lunch as she alleges. *Id.*

### Defendant Erik Hooks

Defendant Erik Hooks served as the Secretary of the North Carolina Department of Public Safety from January 2017 until retiring in July 2021. [Hooks affidavit] During his time in the position as Secretary, DPS had multiple agencies under its control, including the SBI, State Highway Patrol, National Guard, and Adult Corrections ("Prisons"), among others. *Id* In his role as Secretary of DPS, he was responsible for overseeing the various agencies in my control. However, each agency had its own hierarchy of staff members that were responsible for the management of their respective agencies. *Id*

At the relevant time Reuben Young was serving as the Interim Chief Deputy Secretary for Adult Corrections and Juvenile Justice in DPS. [Hooks and Young Decl.]

Reuben Young was the hiring manager for the Central Prison Hospital CEO position ("CEO Position) posted on August 7, 2018. *Id.*

The DPS human resource department provided Mr. Young with seven candidates to interview for the CEO Position. *Id.*

Mr. Young established an interview panel that consisted of Dr. Anita Wilson (the Medical Director for the Division of Prisons), Annie Harvey (who at the time was the Deputy Director of Operations for the Division of Prisons, and Doug Holbrook, Chief Financial Officer for DPS. *Id.*

After the interviews, the panel provided Mr. Young with a recommendation to hire Chad Lovett for the CEO Position. Dr. Wilson also provided a memorandum explaining how Mr. Lovett was the most qualified candidate for the position. [Exhibit 5]. Mr. Young decided to hire Chad Lovett for the CEO Position. *Id.*

Mr. Young's decision was based on the recommendation from the interview panel for the CEO Position, the application materials for all applicants, and Dr. Wilson's memorandum. *Id.*

Mr. Young obtained approval from Secretary Erik Hooks to hire Mr. Lovett for the CEO Position. Mr. Lovett was offered the position and accepted. *Id.*

Mr. Young did not select Plaintiff, Judith Knechtges, for the CEO Position because she was not the most qualified. Plaintiff had significantly less experience in hospital administration than Mr. Lovett. [Exhibit 5]. DPS wanted someone with significant hospital administrative experience because Central Prison Hospital was such an important part of DPS and also because the mismanagement of that facility had the potential to create large liabilities. *Id.*

Mr. Young's decision, confirmed by Erik Hooks, not to hire Plaintiff for the CEO Position was not retaliatory or otherwise based on her reporting of: fraud, violations of law or regulation, misappropriation of State resources, dangers to the

public health and safety, gross mismanagement, a gross waste of monies, or gross abuse of authority. *Id.*

As Secretary, Erik Hooks was not directly involved in the hiring process for the CEO position but relied on Reuben Young as the hiring manager to provide him with a recommendation. *Id.*

## Subsequent Additional Litigation

After filing this federal lawsuit, Plaintiff has continued to file additional claims against these Defendants in both state and federal forums. Upon information and believe Plaintiff includes similar and duplicative allegations of those included in the actions referenced above. *See Knechtges v. NCDPS, 22 OSP 01750* (hereinafter referred to as "Third OAH Contested Case"); *Knechtges v. NCDPS 22 OSP 03001* (hereinafter referred to as "Fourth OAH Contested Case")*; EEOC Charge 14B-2022-00033 (hereinafter referred to as "Charge 3- 00048"); EEOC Charge 14B-2022-00048* (hereinafter referred to as "Charge 4- 00048").

## LEGAL ARGUMENT

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the "record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" show "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party seeking summary judgment bears the initial burden

of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the non-moving party cannot rest on bare pleadings alone, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A district court should grant summary judgment when the record as a whole could not support a reasonable jury returning a verdict for the non-moving party. *See id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An otherwise properly supported motion for summary judgment will not be defeated by the existence of any factual dispute; only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *See id.* at 248–49. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue then there is no genuine issue of material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* at 323.

"Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence in support of'" the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quotation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (1986) (noting that a mere scintilla of evidence is not sufficient). Thus, a nonmoving party who relies on mere belief or conjecture, or the allegations and denials contained in his pleadings, cannot avoid summary judgment.

*See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003), *cert. denied*, 541 U.S. 1042 (2004).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[T]he plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"It is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (reversed, in part, on other grounds); *Celotex*, 477 U.S. at 323–24, ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

I.    **PLAINTIFF'S SEVEN COUNTS LISTED IN HER COMPLAINT ARE BARRED BY THE DOCTRINE OF RES JUDICATA AND COLLATERAL ESTOPPEL THEREFORE SUMMARY JUDGMENT MUST BE GRANTED**

Plaintiff's claims against Defendants are barred by the doctrine of res judicata. The issues brought in this Complaint have already been raised by Plaintiff previously

and have been decided by the OAH Court finding for Defendants and against the Plaintiff. [Exhibit 12, 17] It has been established that Defendants did not retaliate against the Plaintiff by selecting another applicant for the Hospital Chief Executive Officer Position and denying Plaintiff a promotion to that position. Additionally, the CEO Position in an except managerial position with the Agency Head allowed to select whomever for that position. These previously adjudicated claims should be barred and summary judgment should be granted for Defendants.

Prior Litigation

On February 22, 2019, Plaintiff filed a First OAH Case in the North Carolina Office of Administrative Hearings ("NC OAH") alleging that DPS did not provide her with promotional priority and that they retaliated against her in violation of the Whistleblower Act, N.C.G.S. Chapter 126, Article 14, when they did not hire her for the CEO Position. [Exhibit 10]. After filing a motion for summary judgment [Exhibit 12], the OAH Court granted summary judgment in part and found that Plaintiff was not entitled to promotional priority consideration because the CEO position for which Plaintiff applied was an exempt managerial position and as a result, N.C. Gen. Stat. 126-7.1(e) did not apply to the position. [Exhibit 11, 12]

Plaintiff then took a voluntary dismissal of her First OAH case and on May 22, 2020, Plaintiff re-filed her complaint in NC OAH alleging the exact same claims as previously alleged in her initial NC OAH complaint. [Exhibit 15] On August 28, 2020, the Parties had a full trial of this matter before the Administrative Law Judge Melissa Owens Lassiter.

On February 25, 2021, Judge Lassiter entered a Final Decision finding that the Department did not retaliate against the Plaintiff, in violation of N.C. Gen. Stat 126-34.02(b), 126-84, and 126-85, by selecting another applicant for the Hospital Chief Executive Officer Position and denying Plaintiff a promotion to that position. *Id.*

The Court also found that Plaintiff failed to prove by a preponderance of the evidence that the Department retaliated against her, in violation of the Whistleblower Act, N.C. Gen. Stat. 126-84, 126-85, and N.C. Gen. Stat. 126-34.02(b) by selecting another applicant. *Id.*

More specifically, the Court found that the Department presented a legitimate non discriminatory reason for selecting Chad Lovett for the CEO Position . The Court found that the Department chose Mr. Lovett because he was substantially more qualified than Plaintiff, had extensive years of hospital CEO experience, and provided superior interview response to the panel's interview questions. *Id.* Plaintiff lacked the extensive hospital CEO experience that the Department was seeking. Rather, Plaintiff, with the exception of two years, had no experience with hospital administration but worked as a pharmacist and had six years as a pharmacy director. Plaintiff was significantly less experienced as a CEO than Chad Lovett. *Id.*

The Court found that Plaintiff cannot establish that the Department's lawful reason for choosing another candidate was pretexual. *Id.*

The Court in their Order went through the burden-shifting proof scheme developed by the United States Supreme court in *McDonnell Douglas Corp.*

ultimately finding that there was no causal connection between the protected activity and the adverse action taken against Plaintiff. *Id.*

<u>All Seven of Plaintiff's Count Should be Barred by Res Judicata</u>

In Plaintiff's Complaint she brings seven claims against the Defendants, suing them in their individual and official capacities. [D.E. 1] She does not specify which of the four Defendants she brings each count against so it is assumed that all seven counts apply to all of the Defendants.

Plaintiff's first claim alleges a violation of Title VII for not selecting her for the CEO position because of her gender alleging sex discrimination. *Id.* In this claim, Plaintiff alleges that she was a "qualified older female employee for the CEO Position" but that "defendant's reasons for denying her promotion were pretexual" when they did not select her for the CEO position and chose another applicant. *Id* at 52. However, after hearing evidence the OAH Court has already found that this was in fact not true. [Exhibit 12, 17]

Plaintiff's second claim alleges a violation of the ADEA for not selecting her for the CEO position because of her age and alleging age discrimination. *Id.* In this claim, Plaintiff also alleges that she was a "qualified older female employee for the CEO Position" but that "defendant's reasons for denying her promotion were pretexual" when they did not select her for the CEO position and chose another applicant. *Id* at 52. Again, after hearing evidence the OAH Court has already found that this was in fact not true. [Exhibit 12, 17]

Plaintiff's third claim alleges she was retaliated against in violation of

both Title VII and the ADEA and was subjected to a hostile work environment. Plaintiff alleges "she protested the selection of a younger male applicant for the CEO position and was retaliated against by leaving her in the hostile work environment. *Id.* The OAH Court found that the Department did not retaliate against the Plaintiff. [Exhibit 17]

Plaintiff's fourth claim alleges that by not being selected for the CEO position she was treated differently from other male applicants thus depriving her of her right to Equal Protection under the U.S. Constitution. *Id.* In this claim, Plaintiff also alleges that she was a "qualified older female employee for the CEO Position" but that "defendant's reasons for denying her promotion were pretexual" and that she was "treated differently from other male applicants" when they did not select her for the CEO position and chose another applicant. *Id* at 52. Again, the OAH Court already found that the CEO position was a managerial exempt position, meaning that the head of the Agency could chose whomever for the position. [Exhibit 12, 17]

Plaintiff's fifth claim alleges that Defendants deprived Plaintiff of her first amendment right to Free Speech under the U.S. Constitution. Plaintiff claims that while serving as the interim CEO she alerted Defendants to "many issues of public concern" and by denying her for the CEO position, and subjecting her to a hostile work environment violated her right to free speech under the U.S. Constitution. *Id.* Again, the OAH Court already found that the Plaintiff failed to prove by a preponderance of the evidence that the Department retaliated against her, in violation of the Whistleblower Act, N.C. Gen. Stat. 126-84, 126-85, and N.C. Gen.

Stat. 126-34.02(b) by selecting another applicant. *Id.*

Plaintiff's sixth claim alleges that by not being selected for the CEO position, she was treated differently than other male applicants which deprived her of her right to equal protection under the North Carolina Constitution. *Id.* The OAH Court already found that the CEO position was a managerial exempt position, meaning that the head of the Agency could chose whomever for the position. [Exhibit 12, 17]

Plaintiff's seventh claim alleges that by denying her for the CEO position, and subjecting her to a hostile work environment her right to free speech under the North Carolina Constitution was also violated. *Id.* The OAH Court already found that the Plaintiff failed to prove by a preponderance of the evidence that the Department retaliated against her, in violation of the Whistleblower Act, N.C. Gen. Stat. 126-84, 126-85, and N.C. Gen. Stat. 126-34.02(b) by selecting another applicant. *Id.*

<u>Legal Analysis</u>

Under the Full Faith and Credit statute, 28 U.S.C. 1738, this Court is obligated to follow North Carolina law in determining whether a state court judgment should have preclusive effect in a subsequent federal action. See *Davenport v. North Carolina Dep't of Transp., 3 F.3d 89, 92 (4th Cir.1993)* (*Citing Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75 (1984)). A federal court must give a state court judgment the same preclusive effect that the judgment would be given under the law of the state in which it was rendered. *Allen v. McCurry, 449 U.S. 90, 96(1980); Rao v. County of Fairfax, 108 F.3d 42, 44 (4th Cir.1997).*

Additionally, when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts. *University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986)* (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966) (footnote omitted)). By giving preclusive effect to administrative fact-finding, federal courts promote both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources. *University of Tennessee, 478 U.S. at 798.*

"The Supreme Court has expressly held that the full faith and credit statute [28 USC 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *In re Genesys Data Techs.,Inc.,* 204 F.3d 124, 127 (4th Cir. 2000) (quoting *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985)), *certified question answered,* 95 Haw 33, 18 P.3d 896 (2001). "Thus, 1738 'does not allow federal court to employ their own rules of res judicata in determining the effect of state judgments, Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'" *Id.* (quoting *Kremer v. Chemical Constr. Coprp.,* 456 U.S. 461, 481-82 (1982)).

In North Carolina, "[i]t is fundamental that a final judgment, rendered on the merits, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and privies, in all other actions involving the same matter."

*King v. Grindstaff,* 284 N.C. 348, 355, 200 S.E.2d 799, 804 (1973) (internal quotation marks omitted). "In order to successfully assert the doctrine of res judicata [in North Carolina], a litigant must prove the following essential elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identify of the parties or their privies in the two suits." *Moody v. Able Outdoor, Inc.,* 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005). Notably, "[a] judgment must be on the merits and not merely relate to matters of practice or procedure in order to have res judicata effect." *Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ.,* 188 N.C. App. 441, 445, 656 S.E.2d 307, 310 (2008)

In this instant case a final judgment was issued and each of the elements identified by have been met. Thus, Plaintiff's claims are barred by the doctrine of *res judicata.*

## II. THE ELEVENTH AMENDMENT BARS PLAINTIFF'S MONETARY CLAIMS BROUGHT AGAINST THE INDIVIDUAL DEFENDANTS IN THE OFFICIAL CAPACITIES

Assuming arguendo that Plaintiff's claims are not barred by res judicata, Plaintiff's claims for compensatory damages cannot be brought against the Department State Agency or the individual defendants in their official capacities since the State and its officials enjoy the protection of Eleventh Amendment immunity from liabilities that must be paid from public funds. *Quern v. Jordan*, 440 U.S. 332, 342, 99 S. Ct. 1139, 1146, 59 L. Ed. 2d 358, 367-68 (1979); *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982), cert. denied, 464 U.S. 932, 104 S. Ct. 335, 78

L. Ed. 2d 305 (1983); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (no monetary damages payable against State and officials in § 1983 action).

Plaintiff brings seven claims against all four Defendants, suing them in their individual and official capacities. [D.E. 1] Plaintiff also ask the Defendants to make her whole and provide monetary compensation for the alleged wrongdoings. *Id.*

While a state may waive the protection of the Eleventh Amendment by unequivocal State statute or State constitutional provision, *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 1361, 39 L. Ed. 2d 662, 678 (1974), the State of North Carolina has not waived its Eleventh Amendment immunity by either of these means as to 42 U.S.C. §§ 1981 or 1983. *Huang v. Bd. of Governors of UNC*, 902 F.2d 1134, 1139 (4th Cir. 1990); *Stewart v. Hunt*, 598 F. Supp. 1342, 1350-51 (E.D.N.C. 1984).

It is well established that Congress did not intend federal civil rights law to abrogate the states' immunity and cause the state to be monetarily liable in such actions. *Quern*, 440 U.S. at 341, 99 S. Ct. at 1145, 59 L. Ed. 2d at 367; *Edelman*, 415 U.S. at 672, 94 S. Ct. at 1360, 39 L. Ed. 2d at 678; *Jacobs v. Coll. of William & Mary*, 495 F. Supp. 183, 188 (E.D. Va. 1980), aff'd, 661 F.2d 922 (4th Cir. 1981), *cert. denied*, 454 U.S. 1033, 102 S. Ct. 572, 70 L. Ed. 2d 477 (1981).

In the present case, a judgment against the Defendants in their official capacities or an agency of the State, would in fact be a judgment against the State of North Carolina. *Huang*, 902 F.2d at 1138. As a result, for purposes of this action

DPS/DAC is an alter ego of the State, the real party in interest; and the Eleventh Amendment operates to bar Plaintiff's federal claims for monetary damages under 42 U.S.C. §§ 1981 and 1983 against the Agency and its officials. E.g., *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S. Ct. 900, 919, 79 L. Ed. 2d 67, 92 (1984); *Wilson v. Univ. of Virginia*, 663 F. Supp. 1089, 1092 (W.D. Va. 1987).

Even if Plaintiff's claims were viable, Plaintiff cannot obtain monetary damages, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91, 120 S. Ct. 631, 650, 145 L. Ed. 2d 522, 547 (2000), as discussed above, but would be entitled to only one remedy, prospective equitable relief, for such claims. See, e.g., *Edelman*, 415 U.S. at 677, 94 S. Ct. at 1362, 39 L. Ed. 2d at 680; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 2722-23, 105 L. Ed. 2d 598, 626 (1989); *Dennis v. County of Fairfax*, 55 F.3d 151, 156, n.1 (4th Cir. 1995). *See also Will*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (no monetary damages against State and officials).

Accordingly, this Court does not have jurisdiction over Plaintiff's compensatory damage claims and all such claims must be dismissed against the Agency and the individual defendants in their official capacities.

## III. PLAINTIFF'S CLAIMS AGAINST DEFENDANTS' THOMAS AND CATLETT FAIL AND SUMMARY JUDGMENT MUST BE GRANTED.

Plaintiff has brought all seven of her counts contained in her Complaint against Defendants Thomas and Catlett, however they had no involvement in the selection for the CEO position. [Declarations of Thomas and Catlett] Plaintiff's claims against Defendants Thomas and Catlett fail and summary judgment must be granted.

Plaintiff alleges in her Complaint that Defendants Thomas and Catlett were not happy with Plaintiff's new role as interim CEO. *Id* at 37. Plaintiff also bring multiple allegations against Debra Fitzgerald, however she is not a defendant in this lawsuit.

Plaintiff alleges that Defendants Catlett and Thomas "worked relentless to undermine Plaintiff's position as CEO and to sabotage her ability to manage the facility" *Id* at 42. Plaintiff alleges that Defendants Catlett and Thomas's behavior changed drastically when Plaintiff because the Interim CEO. Plaintiff includes supposed examples of this including but not limited to alleging "Catlett not coming to meet with Plaintiff", "making negative comments about the cleanliness of the facility", "Catlett ignoring Plaintiff", "giving Plaintiff the silent treatment", "excluding her at lunch", as well as several examples of "rumors" or things Plaintiff heard from third people that Defendants Catlett and Thomas allegedly said, etc. *Id.* at 43-56

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff's allegations against Defendant's Thomas and Catlett do not rise to actionable behavior and must be dismissed. Furthermore, "[P]etty slights, minor annoyances and simple lack of good manners" are insufficient to sustain a retaliation claims. *Foster v. Univ. of Md. E. Shor,* 717 F.3d 242, 250 (4th Cir. 2015). Title VII is

not a civility code and such trivial harms are not materially adverse. *Id.*

Plaintiff has no direct evidence against Defendants Thomas and Catlett that rises to liable behavior. Furthermore, neither Thomas and Catlett had any involvement with the hiring process for the CEO Position, including whether Ms. Knechtges was selected for the job or another candidate was chosen, therefore all claims against them related to the hiring position but be dismissed. [Declarations of Thomas and Catlett]

Both Defendants did not change their behavior towards Ms. Knechtges while she served as the Interim Chief Executive Officer at the Central Prison ("Interim CEO") or when she returned to Central Pharmacy from being relieved of that interim post in early 2019. *Id.* Neither Defendants did or said anything that could be construed as retaliation against Ms. Knechtges during her tenure as Interim CEO or when she returned to the Apex Pharmacy. *Id.* This includes but is not limited to excluding her in lunch plans and social outings with co-workers as she alleges.

Catlett was not in the Plaintiff's chain of command at all and Thomas also did not retaliate by changing her job duties or excluding her from meetings and emails. *Id.* At no time ever did either Defendants make inappropriate or offense comments, jokes, or asked question to or about Ms. Knechtges regarding her race, national origin, sex or age as alleged. *Id.*

Ms. Knechtges did discuss with Defendants their prior working relationship and Plaintiff shared rumors she heard of comments purportedly made by Defendants

which were completely not true. *Id.* At no time did Thomas treat Ms. Knechtges differently due to her membership in a particular protected class or class status. *Id.*

Defendants believe possibly the only meetings and communications Ms. Knetchges may not have been brought into were pertaining to projects that she was not involved. *Id.* At no time did Thomas give Ms. Knetchges, the "silent treatment" or exclude her from lunch as she alleges. *Id.*

There is no evidence that discredits Defendants behavior and Plaintiff cannot establish her burden to establish that Thomas and Catlett did anything wrong or actionable. For this reason, the Court should grant summary judgment as to all the claims against Defendants Thomas and Catlett.

## IV. PLAINTIFF'S CLAIMS OF RETALIATION AND DISCIMINATION AGAINST DEFENDANTS FAIL AND SUMMARY JUDGMENT MUST BE GRANTED.

Assuming arguendo that Plaintiff's claims are not barred by res judicata, Plaintiff's claims of retaliation and discrimination fail based under Title VII or the ADEA. Plaintiff has no direct evidence of retaliation and relies on the *McDonnell Douglas* framework. Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of retaliation. *See, e.g., St. Mary's Honor Ctr.,* 509 U.S. at 506; *Burdine,* 450 U.S. at 252-255; *Holland,* 487 F.3d at 218; *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir. 2001).

To establish a prima facie retaliation claim under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action

against her that a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. *See, e.g., Foster v. Univ. of Md. E. Shor,* 717 F.3d 242, 250 (4th Cir. 2015; *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 271 (4th Cir. 2015)(en banc); *Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 410 (4th Cir. 2013); *Holland,* *487* F.3d at 218; *Price v. Thomas,* 380 F.2d 209, 212 (4th Cir. 2004); *Burlington N. Sante Fe Ry. v. White,* 548 U.S. 53, 67-79 (2006).

Under *McDonnell Douglas*, even if a plaintiff can prove a prima facie case, the employer may rebut the inference of discrimination arising there from by articulating a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas Corp.*

Once the employer articulates a legitimate nondiscriminatory reason for its decision, the employer is entitled to summary judgment unless the plaintiff can offer evidence that the employer's reason is a mere pretext for discrimination. *Id.* at 804; *Texas Dep't of Community Affairs v. Burdine* U.S. 253 (1981); *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 298 (4th Cir. 2004) (summary judgment affirmed because plaintiff could not present evidence that employer's articulated nondiscriminatory reason for termination was a pretext for discrimination).

The Agency's good faith belief that another candidate is better qualified is a legitimate, non-discriminatory reason for an adverse employment decision. *See, e.g. Heiko v. Colombo Sav. Bank, F.S.B.,* 434 F.3d 249, 259 (4th Cir. 2006); *Diamond,* 416 F.3d at 319; *Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 189 (4th Cir. 2004); *Evans,* 80 F.3d at 960. A defendant's burden of providing a legitimate, non-

discriminatory reason is one of production, not persuasion. *St. Mary's Honot Ctr.,* 509 U.S. at 509 A defendant must present its legitimate, non-discriminatory reason "with sufficient clarity to that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 255-56.

In this case, Reuben Young was the hiring manager for the Central Prison Hospital CEO position ("CEO Position) posted on August 7, 2018. *Id.* The DPS human resource department provided Mr. Young with seven candidates to interview for the CEO Position. *Id.* Mr. Young established an interview panel that consisted of Dr. Anita Wilson (the Medical Director for the Division of Prisons), Annie Harvey (who at the time was the Deputy Director of Operations for the Division of Prisons, and Doug Holbrook, Chief Financial Officer for DPS. *Id.*

After the interviews, the panel provided Mr. Young with a recommendation to hire Chad Lovett for the CEO Position. Dr. Wilson also provided a memorandum explaining how Mr. Lovett was the most qualified candidate for the position. [Exhibit 5]. Mr. Young decided to hire Chad Lovett for the CEO Position. *Id.*

Mr. Young's decision was based on the recommendation from the interview panel for the CEO Position, the application materials for all applicants, and Dr. Wilson's memorandum. *Id.*

Mr. Young obtained approval from Secretary Erik Hooks to hire Mr. Lovett for the CEO Position. Mr. Lovett was offered the position and accepted. *Id.*

Mr. Young did not select Plaintiff, Judith Knechtges, for the CEO Position because she was not the most qualified. Plaintiff had significantly less experience in

hospital administration than Mr. Lovett. [Exhibit 5]. DPS wanted someone with significant hospital administrative experience because Central Prison Hospital was such an important part of DPS and also because the mismanagement of that facility had the potential to create large liabilities. *Id.*

A federal court does not sit as a "super personnel department" to review the "prudence of employment decisions". *Cf. Feldman v. Law Enf't Assocs. Corp.,* 752 F.3d 339, 350 (4th Cir. 2014) An employer "has discretion to chose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine,* 450 U.S. at 259; *see Causey v. Balog,* 162 F.2d 795, 801 (4th Cir. 1998); *Amirmokri v. Baltimore Gas & Elec. Co.,* 60 F.2d 1126, 1130 (4th Cir. 1995); *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 909-11 (4th Cir. 1989).

Because the Agency has provided legitimate, non-retaliatory reasons for actions related to Plaintiff, Plaintiff bears the burden to establish by a preponderance of the evidence that the proffered reasons were a pretext for discrimination *Burdine,* 450 U.S. at "The federal courts do not serve to second-guess workplace decisions; thus, the claim cannot be based on mere disagreement with the employment decision." *Guseh v. N.C. Cent. Univ.,* 423 F. Supp. 2d (M.D.N.C. 2005), *aff* 206 Fed. Appx. 255 (4th Cir. 2006); *see also DeJarnette v. Corning, Inc.,* 133 F.3d 293, 298-99 (4th Cir. 1998).

Plaintiff cannot come forward with admissible evidence that is more than self-serving opinions or speculation therefore summary judgment should be granted in Defendants' favor. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

It is clear that Plaintiff's personal belief is not sufficient to create a genuine issue of material fact sufficient to defeat Defendants' motion for summary judgment. *See Ennis* v. *Nat 7 Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995) (the mere incantation of discriminatory intent or state of mind does not operate as a talisman to defeat a valid motion for summary judgment); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir. 1989) (a plaintiffs own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action)

No rational jury could find that Defendants failed to promote Plaintiff to the CEO position due to her race, age or gender. Plaintiff also cannot present any credible evidence upon which a reasonable jury could return a verdict in her favor on a retaliation claim against any Defendant. Therefore, there are no genuine issues as to any material fact and Defendants are entitled to judgment as a matter of law.

## V. PLAINTIFF CANNOT PRESENT SUFFICIENT EVIDENCE THAT SHE WAS DEPRIVED OF EQUAL PROTECTION UNDER THE U.S. CONSTITUTION OR NORTH CAROLINA CONSTITUTION.

The Equal Protection Clauses of the United States and North Carolina Constitutions "forbid North Carolina from denying any person the equal protection of the laws, and require that all persons similarly situated be treated alike." *State v. Fowler*, 197 N.C. App. 1, 26, 676 S.E.2d 523, 543–44 (2009) (citations and internal quotation marks omitted), appeal dismissed and disc. review denied, 364 N.C. 129, 696 S.E.2d 695 (2010); see *U.S. Const. amend. XIV, § 1* ("No State shall . . . deny to

any person within its jurisdiction the equal protection of the laws."); *N.C. Const. art. I, § 19* ("No person shall be denied the equal protection of the laws . . . .").

The analysis of an equal-protection challenge is two-pronged: Our state courts use the same test as federal courts in evaluating the constitutionality of challenged classifications under an equal protection analysis. When evaluating a challenged classification, the court must first determine which of several tiers of scrutiny should be utilized. Then it must determine whether the statute meets the relevant standard of review. Fowler, 197 N.C. App. at 26, 676 S.E.2d at 544 (citations and internal quotation marks omitted).

Although the Equal Protection Clause "require[s] that all persons similarly situated be treated alike[,]" *id.* (citation and internal quotation marks omitted), it "do[es] not require perfection in respect of classifications.

In the instant case, Plaintiff was treated the same as all other applicants. On October 2, 2018, Plaintiff was interviewed for the CEO Position. [Exhibit 4]. In addition to Plaintiff, the Department interviewed four other candidates, two external and two internal. *Id.* The interview panel consisted of Anita Wilson- the Medical Director for the Division of Prisons, Annie Harvey- who at the time was the Deputy Director of Operations for the Division of Prisons, and Doug Holbrook- Chief Financial Officer for the Department. [Exhibits 4, 5, 7, 7.1].

Plaintiff and one other candidate had the lowest interview scores. Three other candidates obtained better interview scores than Plaintiff. [Exhibit 4]. (noting Plaintiff and one other candidate received a Below Average score from one of three

interviewers and only average scores from two other interviewers).

Two top candidates were recommended by the interview panel based on the interviews and application materials. Chad Lovett was the recommended top candidate. [Exhibit 4,5,7,7.1].

Furthermore, the OAH Court already found that Plaintiff was not entitled to promotional priority consideration because the CEO position for which Plaintiff applied was an exempt managerial position and as a result, N.C. Gen. Stat. 126-7.1(e) did not apply to the position. The Second OAH Court also found that the Department presented a legitimate nondiscrminatory reason for selecting Chad Lovett for the CEO Position.

For these reasons Plaintiff's Equal Protection Claims should be dismissed and summary judgment should be granted as to all Defendants.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment granting summary judgment in favor of Defendants and dismiss Plaintiff's action.


This the 17th day of May, 2023.

JOSHUA H. STEIN ATTORNEY GENERAL

/s/ Bryan G. Nichols Bryan G. Nichols
Assistant Attorney General
N.C. State Bar No. 42008
N.C. Department of Justice
P.O. Box 629

Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6568

Facsimile: (919) 716-6761 E-mail:
bnichols@ncdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing

Memorandum of Law in Support of Defendants' Motion for Summary Judgment

with the Clerk of the Court utilizing the CM/ECF system:

Valerie Bateman
New South Law Firm, P.C. 209
Lloyd Street, Suite 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com

This the 17th day of May 2023.

/s/ Bryan G. Nichols
Bryan G. Nichols