UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

File No. 5:21-CV-00225-BO

|  |  |
|---|---|
| JUDITH KNECHTGES, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| N. C. DEPARTMENT OF | ) |
| PUBLICSAFETY, *et al.* | ) |
|  | ) |
| Defendant. | ) |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AND ADDITIONAL MATERIAL FACTS**

NOW COMES Plaintiff, by and through her undersigned counsel and respectfully submit her response to Defendants' Statement of Material Facts and additional material facts in opposition to Defendants' Motion for Summary Judgment and incorporates by reference the contents of DE55-2, as well as DE56-05 – DE56-56-10 listed below, and the evidence contained in the documents listed in Plaintiff's Appendix to this document:

| DE56-05 | Letter selecting Plaintiff as Interim CEO 04.22.2016 |
|---------|------------------------------------------------------|
| DE56-06 | Plaintiff's Application for Third Posting |

1

| DE56-07 | Third CEO Posting |
|---------|-------------------|
| DE56-08 | Third Posting Interview Summary |
| DE56-09 | Wilson Memorandum justifying selection of external applicant Chad Lovett over the internal candidates |
| DE56-10 | Email from Sara Royster to Reuben Young re applicants forwarded for interviews |

.

1.  Plaintiff's allegations, in the operative Complaint are that she was discriminated against by Defendants by failing to promote her to the Central Prison Hospital CEO position based on her race, sex and age. [D.E.1]

| **Plaintiff's Response:** |
|---------------------------|
| Plaintiff also alleges that her constitutional rights to equal protection and free speech were violated when she was denied promotion to the CEO position.  DE01,¶4. |

2.  Plaintiff also alleges that Defendants retaliated and created a hostile work environment after she complained about discrimination. Id at 3.

| **Plaintiff's Response:** |
|---|
| Undisputed. |

3.　　Plaintiff is still employed with the State and has been working continuously for the State since 2003.

| **Plaintiff's Response:** |
|---|
| On June 28, 2023, Plaintiff was constructively discharged by Defendant DAC's when she was informed that she was going to be required to report back to Central Pharmacy and be supervised by Debra Fitzgerald and Defendant Janet Thomas |

4.　　Plaintiff asks the Court to issue an injunction directing Defendant Hooks to hire her for the CEO position. Plaintiff also asks that "the Defendant" be enjoined from discriminating against her on the basis of sex and age in the terms and conditions of employment as well as making her whole and providing monetary compensation for the alleged wrongdoings. Id.

| **Plaintiff's Response:** |
|---|
| Undisputed. |

5.    On April 22, 2016 Plaintiff was appointed by the director of DPS to act

as the interim Acting Chief Executive Officer for Central Prison Hospital

for DPS. [Exhibit 1].

| **Plaintiff's Response:** |
|---|
| Undisputed.    Additional   material   facts   relating   to   Plaintiff's qualifications  for  the  position  are  included  in  the  Declarations  of Joseph H. Prater and W. David Guice. |

6.    The CEO Position is an except [sic] management position not subject to

protection under Article 1, Chapter 126, of the North Carolina Human

Resources Act.

| **Plaintiff's Response:** |
|---|
| It is undisputed that the position was exempt managerial.  Defendants have argued that this means that Plaintiff was not entitled to a priority as a State employee over Chad Lovett.  Lovett was not only an external applicant, he had no executive managerial experience in **correctional** healthcare delivery which was a management preference. Promotional  priority  provides  that  if   an  external  and  an  internal |

4

applicant are "substantially equally qualified," then the internal candidate must be offered the position. Plaintiff's Declaration. DE56-08 shows that all of the applicants other then Lovett were entitled to state employee promotional priority if they were "substantially equally qualified" to Lovett.

7.   The Interim CEO assignment was temporary following the unexpected departure of the prior CEO. At the time of the temporary appointment, Plaintiff was employed as the Pharmacy Director at Apex Central Pharmacy and had been working with the state in various capacities since approximately 2003.

**Plaintiff's Response:**

It is undisputed that at the time of the temporary appointment, Plaintiff was employed as the Pharmacy Director at Apex Central Pharmacy and had been working with the state in various capacities since approximately 2003. It is disputed that the departure of the previous CEO was "unexpected." In fact, the previous CEO was replaced as a consequence of the missing controlled substances situation and the Director of Healthcare Administration received a

> written warning. Plaintiff Declaration. See also Prater Declaration;
> Guice Declaration.

8. On August 7, 2018, the Department posted the "Permanent" Chief Executive Officer for Central Prison Hospital. [Exhibit 2]. The Department had previously posted the CEO Position two times. [Exhibit 7.1] The position was not filled through either of these postings. Id.

> **Plaintiff's Response:**
>
> - It is undisputed that the CEO position was posted on August 7, 2018, and that the position had also been posted on April 20, 2017, and December 21, 2017. It is one of the central issues in this case that the multiple postings of the position is evidence of the discriminatory and retaliatory animus by the Defendants towards Plaintiff. In addition, it is undisputed that the position was not filled on either of the previous postings, but it is because Secretary Hooks refused to allow Deputy Secretary Prater to offer Plaintiff the position even though Deputy Secretary Prater and Chief Deputy Guice recommended she be

6

offered the position.

- After Plaintiff's recommendation by Chief Deputy Guice and Deputy Prater to fill the position, documents seeking approval of that decision were provided through Human Resources and all the way to the Secretary's office where the recommendation was rejected on December 21, 2017, after Chief Deputy Guice had left NCDPS. *See* Plaintiff Declaration; Prater Declaration; Guice Declaration; Howard Declaration; Royster Declaration

9.    The posting for the CEO position notified all applicants that the position was an exempt managerial position not subject to protection under Article 1, Chapter 126, of the North Carolina Human Resources Act. [Exhibit 2, 8]. The posting also directed all prior applicants to resubmit their materials [Exhibit 2]

**Plaintiff's Response:**

- The August 8, 2018 posting speaks for itself. Notably, this third posting like the second posting (December 20, 2017) was open to external candidates.

- Also, notably, this posting occurred after Deputy Secretary

7

Prater had retired. It was filled after HR director Shari Howard had left the agency. See Guice, Prater, Howard Declarations.

- Notably, it also was filled after the DEA investigation had concluded and the DEA had issued its fine and the investigation was no longer open. The successful conclusion of that investigation relied entirely on the representations of the NCDPS that internal controls and leadership were such that the issue had been corrected, most of which had been overseen by Plaintiff, and all of which occurred under her tenure as CEO. *See* Plaintiff Declaration and attached exhibits regarding the Controlled Substances Investigation.

10. The job posting lists the following minimum education and experience requirements, "Master's degree in Hospital Administration, Health Care Administration, or a clinical Human Resources field, AND six (6) years of hospital administration experience" or "Bachelor's degree in health care or business administration AND eight (8) years of hospital administration experience" or "An equivalent combination of education and experience." Id.

**Plaintiff's Response:**

- Notably, the **Hospital Director job classification specs** applicable to the job after the class and comp changes (which was the purported basis for the third posting along with unspecified interview irregularities denied by Declarant Prater) require an MHA degree. Lovett stated on his application, that he had an MHA degree, but he did not. See Plaintiff Declaration.[1]

- Plaintiff had an MHA and she also had experience (but not 7 years) in correctional healthcare institution. Lovett did not.

- Lovett and Knechtges both would have to meet the minimum education and experience criteria with "equivalent combinations of education and experience."

- One of the applicants for the second and third posting, applicant CC, was forwarded by Sara Royster to Chief Deputy Young for consideration, had over **eight** years of correctional healthcare administration/executive officer experience. Assuming that executive level correctional health care CEO experience was a legitimate management preference, Defendants have not

---

[1] The Disciplinary Policy for NCDPS in 2016 and in 2023 provides that termination is required for applicant's who falsify their credentials on their application to qualify for a position. See Plaintiff's Declaration.

explained why no effort was made to consider applicant CC who had over eight years of correctional health care CEO management / administration experience which was what Lovett precisely lacked and what Knechtges had for over two years with stellar performance ratings.

- Notably, while Lovett had more CEO experience, he actually had **no executive level** experience in "healthcare/behavioral health in a hospital or institutional setting where the population served were incarcerated or remanded involuntarily or by court order is experience." Thus, he did not meet the stated management preference and should have been screened out.

- In addition, he had no experience with mental health beds and his facilities and staff were much smaller than CPHC, and involved patients who were chronically ill and not incarcerated inmates with significant mental health issues and known behavioral issues.

11. On August 19, 2018, Plaintiff applied for the CEO Position. [Exhibit 3]. While Plaintiff has a Master's degree in Health Services Management

and Policy from 1981, she only has 2.5 years of experience with hospital administration. Id. Plaintiff's other experience is limited to being a pharmacist and six years as a pharmacy director as opposed to a hospital administrator. Id.

| **Plaintiff's Response:** |
| --- |
| • The management preference on the second and third postings sought "previous **executive-level experience at a correctional or involuntary custody behavioral of medical healthcare facility/institution**." Compare this preference to the preference on the first posting which stated a preference only for "[p]revious executive-level experience at a behavioral or medical healthcare facility." Likewise, the application for the specific CEO position required applicants to indicate their "prior experience in in healthcare/behavioral health in a hospital or institutional setting where the population served were incarcerated or remanded involuntarily or by court order" and to list the facilities at which they had that executive level experience. Knechtges answered this question honestly and fully. Lovett answered this question "yes" and yet he had no |

> executive level experience in delivering healthcare in a
> correctional or involuntary custodial setting. See Plaintiff
> Declaration and Postings, Applications attached as Exhibits.
>
> - In addition, the minimum education requirement for the post
>   classification and compensation system changes applicant job
>   specifications for a Hospital Director position, which was
>   supposedly the reason for the third re-posting, required an MHA
>   degree, which neither Lovett nor any of the other interviewed
>   applicants had.

12.     On October 2, 2018, Plaintiff was interviewed for the CEO Position.
[Exhibit 4]. In addition to Plaintiff, the Department interviewed four
other candidates, two external and two internal. Id.

> **Plaintiff's Response:**
>
> - Disputed and incomplete. The same four **internal** applicants who
>   were interviewed on the first posting: Plaintiff and applicants JA, NC,
>   and WBL were interviewed on the third posting, but only **one**
>   **external** applicant, Chad Lovett, was interviewed on the third
>   posting.

**First Posting:** The first interview panel selected by Joe Prater, hiring manager, rated these applicants as follows:

| Name / Date Interview | Interviewer Joe Prater | Interviewer Annie Harvey | Interviewer Dr. Susan Peebles | Overall |
|---|---|---|---|---|
| JA (09.20.2017) | A | A | A | A |
| NC (09.21.2017) | BA | BA | BA | BA |
| Judith Knechtges (09.21.2017) | AA | A | AA | AA |
| WBL (10.03.2017) | A | A | A | A |

All three members of the panel **signed** the interview sheet recommending Judith Knechtges as the candidate for further consideration. Royster, Prater Declarations.

**Third Posting:** The interview panel selected by Reuben Young, then the hiring manager, rated the same four **internal** applicants and **one external** applicant, Chad Lovett, as follows:

| Name / Date Interview | Interviewer Anita Wilson | Interviewer Annie Harvey | Interviewer Doug Holbrook | Overall |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| JA (10.01.2018) | AA | AA | A | AA |
| NC (10.01.2018) | A | AA | AA | AA |
| Chad Lovett (10.01.2018) | AA | A | A | A |
| Judith Knechtges (10.02.2018) | A | A | BA | A |
| WBL (10.02.2018) | A | A | BA | A |

DE68-08. The first page also indicates of the four internal applicants, two of them were awarded higher interview scores that Chad Lovett (Above Average):  applicants JA and NC.  Chad Lovett, Judith Knechtges, and applicant WBL all received "Average" interview scores overall.

None of the interviewers signed the sheet but it appears that someone wrote in Chad Lovett's name as the recommended candidate "for further consideration."  The first page also indicates that all four of the internal applicants had state employee promotional priority over Chad Lovett.

13.   The interview panel consisted of Anita Wilson- the Medical Director for the Division of Prisons, Annie Harvey- who at the time was the Deputy

Director of Operations for the Division of Prisons, and Doug Holbrook-

Chief Financial Officer for the Department. [Exhibits 4, 5, 7, 7.1].

| |
|---|
| **Plaintiff's Response:** |
| Undisputed but incomplete.<br><br>    • **Anita Wilson** had clashed with Plaintiff while Plaintiff serving as interim CEO over the issue of controlling the number of cell phones that could come into CPHC.  When Douglas Holbrook expressed doubts about Lovett as the recommended applicant, Wilson "assuaged" Holbrooks doubts, telling Holbrook she "could work him as leader of the hospital." Plaintiff Dec., Exh x Thomas Declaration, Plaintiff Declaration.  She replaced Susan Peebles on the first interview panel but lacked Peebles' experience with administering State institutions managed by the Department of Health and Human Services (DHHS) which provided healthcare to those involuntarily residing in those institutions.  In addition, Peebles was a neutral outsider who had no previous knowledge of the candidates. Wilson was working as a Medical Director II at the time she served on the panel.  She left that position in September 2019 and sometime after the interview panel selected |

Chad Lovett and she had left NCDPS, she was approached to return and "asked . . . if she was interested in applying" for Dr. Metiko's position. Wilson was selected to replace him as Medical Director III on March 31, 2020.

- **Doug Holbrook** was the Chief Financial Officer (CFO) of NCDPS and replaced Joe Prater on the interview panel. He had been CEO since 2017 and prior to that he was Legislative Liaison in 2012 and 2013 and had worked in state government for 29+ years, except during 2014-2016, and he had no private sector experience. Holbrook lacked knowledge and experience with the delivery correctional healthcare, admitting his involvement was "marginal."

- In addition, despite his ranking of Plaintiff as below average in her interview performance, Holbrook expressed hesitation about the selection of Chad Lovett. For example, Holbrook said if he had been aware that at the time Lovett served as a hospital CEO prior to 2017, when the position was first posted, Lovett did not have a bachelors' degree, he would have asked more questions because "[t]hat would have seemed unusual to" Holbrook.

- In addition, Holbrook noted twice that Lovett was not his first

choice, the second time stating:

> I will reinforce that he was not my first choice among the candidates that we interviewed. So I was -- I was -- my preferences were assuaged by the leadership of the Division that was -- also participated in the panel that they felt that he had the requisite skills and that they could work with him as a leader of the hospital and give it the -- well, I'll just stop there.

Plaintiff's Declaration.

- Annie Harvey was on both interview panels but was not called as a witness and has not provided any sworn testimony since she left NCDPS.

14. Plaintiff and one other candidate had the lowest interview scores.

**Plaintiff's Response:**

Disputed.

- As stated above, both Lovett, Knechtges, and applicant WBL had overall interview scores of "Average." **Three applicants, including the successful applicant**, received the "lowest interview scores" which were still "Average." **No applicant received an overall BA score on the interviews for the third posting.**

17

- Only Doug Holbrook rated Knechtges (and applicant WBL) as "below average" in their interview performances, but this did not prevent them from receiving overall scores of "Average" **along with Chad Lovett.**

15.  Three other candidates obtained better interview scores than Plaintiff. [Exhibit 4]. (noting Plaintiff and one other candidate received a Below Average score from one of three interviewers and only average scores from two other interviewers).

**Plaintiff's Response:**

Disputed.

- As stated above, Plaintiff, applicant WBL and Chad Lovett, the successful applicant, all received overall scores of "Average."
- Doug Holbrook awarded the only "Below Average" scores and they were awarded to Plaintiff and applicant WBL.

16.  Two top candidates were recommended by the interview panel based o the interviews and application materials. Chad Lovett was the recommended top candidate. [Exhibit 4,5,7,7.1].

18

| Plaintiff's Response: |
| --- |
| Disputed. |
| <ul><li>While Anita Wilson's justification for hiring an external application (DE56-09,p1) stated that "two top candidates were chosen by the interviewing team," other than Chad Lovett, the other "top candidate" was not identified and cannot be discerned from the interview summary which ranked both applicant JA and NC as "Above Average" and applicants Chad Lovett and applicants WBL and Plaintiff as "Average."</li><li>Furthermore, Wilson's justification distinguishes Lovett from applicants WBL, JA, and Plaintiff, but does not mention applicant NC, even though he received an overall "AA" rating. (DE56-08,p2)</li></ul> |

17. Reuben Young, who at the time was the Interim Chief Deputy Secretary, was the hiring manager and made the initial decision to hire Chad Lovett based on the application materials and information provided by the interview panel, including a memorandum detailing Mr. Lovett's superior qualifications. [Exhibit 7]. He then obtained approval from DPS Secretary Erik Hooks. Id.

19

**Plaintiff's Response:**

Undisputed.

- Notably, Wilson's memorandum "detailing Mr. Lovett's superior qualifications" mentioned the following factors:
  - CPHC had 216 mental health beds and CEO was being sought to be "responsible for ensuring high quality health and psychiatric care."
    - Lovett had no experience with mental health beds.
  - Lovett selected due to his "extensive experience as a hospital CEO."
    - Lovett lacked a BA during all of that experience prior to 2013. He lacked an MHA degree, required by the posting and the class specifications for the position. Further, he application falsely stated he had an MHA degree.
  - "Along with his administrative experience, he has nine years of correctional experience with the Federal Bureau of Prisons." (BOP)
    - This experience was omitted on his first application.

20

On his second application, he listed his employment with the federal BOP as a licensed practical nurse and religious service assistant and noted he was supervised by the Chaplain and described his position as having "various duties which would not really apply to current position."

- Wilson's justifications for hiring Lovett over the other internal applicants were:

  o Knechtges: met the education requirement but did not have extensive CEO experience and did not interview well.

  o WBL: had healthcare administration experience but lacked the level of education and specific hospital CEO experience.

  o JA: met education requirement but lacked specific hospital CEO experience, Joint Commission accreditation experience, and advanced fiscal management.[2]

18.   Mr. Lovett was chosen as the top candidate and offered the position of CEO [Exhibit 5] On December 12, 2018, Appellant-Plaintiff was notified

---

[2] Applicant JA had PhD in Business Administration and an MHA.

that her temporary assignment as Acting CEO for Central Prison Hospital was ending and that she was being returned to her permanent position of Pharmacy Director at Apex Central Pharmacy. [Exhibit 9].

| Plaintiff's Response: |
| --- |
| Undisputed. |

19. On February 22, 2019, Plaintiff filed a complaint in the North Carolina Office of Administrative Hearings ("NC OAH") alleging that the Department discriminated against her for not selecting her for the CEO Position. [Exhibit 10]. Knechtges v. NC Department of Public Safety, 19 OSP 01028 -(hereinafter referred to as the "First OAH Contested Case").

| Plaintiff's Response: |
| --- |
| Disputed. <br><br> • DE56-16 does not show a claim for discrimination or a claim under 42 U.S.C. § 1983.  Claims under 42 U.S.C. § 1983 are against individual defendants and are not precluded by matters in which a Plaintiff could not obtain comprehensive relief for her constitutional civil rights claims in the OAH proceeding. *Passaro v. Virginia,* 935 F.3d 243, 249 (4th Cir. 2019). |

22

- Moreover, the administrative proceeding below which ruled against Plaintiff on her priority consideration claims and her State law Ch. 126, Article 14 claims is not entitled to res judicata / collateral estoppel value as to the individual defendants in their individual capacity. *Brooks v. Arthur*, 626 F.3d 194, 202 (4th Cir. 2010) ("a government employee in his official capacity is not in privity with himself in his individual capacity for the purposes of res judicata.") (quoting *Andrews v. Daw*, 201 F.3d 521 (4th Cir.2000)).

20. On April 3, 2019, the North Carolina Attorney General's Office filed a Motion for Summary Judgment on behalf of the Department in NC OAH court. [Exhibit 11].

**Plaintiff's Response:**

Undisputed.

- DE56-16 does not allege a claim for discrimination or a claim under 42 U.S.C. § 1983. Claims under 42 U.S.C. § 1983 are against individual defendants and are not precluded by matters in which a Plaintiff could not obtain comprehensive relief for her constitutional civil rights claims in the OAH proceeding.

> *Passaro v. Virginia,* 935 F.3d 243, 249 (4th Cir. 2019).
>
> • Moreover, the administrative proceeding below which ruled against Plaintiff on her priority consideration claims and her State law Ch. 126, Article 14 claims is not entitled to res judicata / collateral estoppel value as to the individual defendants in their individual capacity. *Brooks v. Arthur*, 626 F.3d 194, 202 (4th Cir. 2010) ("a government employee in his official capacity is not in privity with himself in his individual capacity for the purposes of res judicata.") (quoting *Andrews v. Daw*, 201 F.3d 521 (4th Cir.2000)).

21.     On September 11, 2019, the Court entered an Order granting the Department's Motion for Summary Judgment in part. [Exhibit 12].

> **Plaintiff's Response:**
>
> Undisputed.
>
> • DE56-16 does not allege a claim for discrimination or a claim under 42 U.S.C. § 1983. Claims under 42 U.S.C. § 1983 are against individual defendants and are not precluded by matters in which a Plaintiff could not obtain comprehensive relief for her

constitutional civil rights claims in the OAH proceeding. *Passaro v. Virginia,* 935 F.3d 243, 249 (4th Cir. 2019).

- Moreover, the administrative proceeding below which ruled against Plaintiff on her priority consideration claims and her State law Ch. 126, Article 14 claims is not entitled to res judicata / collateral estoppel value as to the individual defendants in their individual capacity. *Brooks v. Arthur,* 626 F.3d 194, 202 (4th Cir. 2010) ("a government employee in his official capacity is not in privity with himself in his individual capacity for the purposes of res judicata.") (quoting *Andrews v. Daw*, 201 F.3d 521 (4th Cir.2000)).

22. The Court found that Plaintiff was not entitled to promotional priority consideration because the CEO position for which Plaintiff applied was an exempt managerial position and as a result, N.C. Gen. Stat. 126-7.1(e) did not apply to the position. Id.

**Plaintiff's Response:**

Undisputed and not dispositive in this case. Further, there is no authority for the proposition that neither Plaintiff nor the three other

25

internal applicants (JA, NC, and WBL) were entitled to promotional priority, as indicated on the interview summary (DE56-08), and it is implicitly admitted that they were entitled to promotional priority because Wilson's memorandum (DE56-09) had the explicit purpose of justifying the selection of external applicant Lovett, so the selection decision would be approved by OSHR.

23.     The Order denied summary judgment as to Plaintiff's claim that Plaintiff-Appellant failed to establish a whistleblower retaliation claim. Id. On October 1, 2019, Plaintiff filed a voluntary dismissal of her case 19 OSP 01028 without prejudice and reserved the right to refile within one year. [Exhibit 14].

**Plaintiff's Response:**

Disputed, the agency's motion for summary judgment was denied on Plaintiff's N.C. G.S. Ch. 126, Art. IV claim. Undisputed as to the filing of the voluntary dismissal but irrelevant:

- DE56-16 does not allege a claim for discrimination or a claim under 42 U.S.C. § 1983. Claims under 42 U.S.C. § 1983 are against individual defendants and are not precluded by matters

in which a Plaintiff could not obtain comprehensive relief for her constitutional civil rights claims in the OAH proceeding. *Passaro v. Virginia,* 935 F.3d 243, 249 (4th Cir. 2019).

- Moreover, the administrative proceeding below which ruled against Plaintiff on her priority consideration claims and her State law Ch. 126, Article 14 claims is not entitled to res judicata / collateral estoppel value as to the individual defendants in their individual capacity. *Brooks v. Arthur*, 626 F.3d 194, 202 (4th Cir. 2010) ("a government employee in his official capacity is not in privity with himself in his individual capacity for the purposes of res judicata.") (quoting *Andrews v. Daw*, 201 F.3d 521 (4th Cir.2000)).

24. On May 22, 2020, Plaintiff re-filed her complaint in NC OAH alleging the exact same claims as previously alleged in her initial NC OAH complaint filed in February 2019. [Exhibit 15]. Knechtges v. NC Department of Public Safety, 20 OSP 02124- (hereinafter referred to as the "Second OAH Contested Case").

**Plaintiff's Response:**

> Undisputed but irrelevant for reasons already stated.

25. On August 28, 2020, the Parties had a full trial of this matter before the Administrative Law Judge Melissa Owens Lassiter.

> **Plaintiff's Response:**
>
> Undisputed but irrelevant for reasons already stated.

26. On February 25, 2021, Judge Lassiter entered a Final Decision finding that the Department did not retaliate against the Plaintiff, in violation of N.C. Gen. Stat 126-34.02(b), 126-84, and 126-85, by selecting another applicant for the Hospital Chief Executive Officer Position and denying Plaintiff a promotion to that position. Id.

> **Plaintiff's Response:**
>
> Undisputed but irrelevant for reasons already stated. In addition, the priority consideration claim, raised in the second petition, was not considered by the Administrative Law Judge in her decision.

27. The Court also found that Plaintiff failed to prove by a preponderance of

28

the evidence that the Department retaliated against her, in violation of the Whistleblower Act, N.C. Gen. Stat. 126-84, 126-85, and N.C. Gen. Stat. 126-34.02(b) by selecting another applicant. Id.

| Plaintiff's Response: |
| --- |
| Undisputed but irrelevant for reasons already stated. |

28. The Court found that the Department presented a legitimate nondiscrminatory [sic] reason for selecting Chad Lovett for the CEO Position.

| Plaintiff's Response: |
| --- |
| Undisputed but irrelevant for reasons already stated. |

29. The Court found that the Department chose Mr. Lovett because he was substantially more qualified than Plaintiff, had extensive years of hospital CEO experience, and provided superior interview response to the panel's interview questions. Id.

| Plaintiff's Response: |
| --- |

| |
|---|
| Undisputed but irrelevant for reasons already stated. |

30.     The Court found that Plaintiff lacked the extensive hospital CEO experience that the Department was seeking. Rather, Plaintiff, with the exception of two years, had no experience with hospital administration but worked as a pharmacist and had six years as a pharmacy director. Plaintiff was significantly less experienced as a CEO than Chad Lovett. Id.

| **Plaintiff's Response:** |
|---|
| Undisputed but irrelevant for reasons already stated. |

31.     The Court found that Plaintiff cannot establish that the Department's lawful reason for choosing another candidate was pretexual. Id.

| **Plaintiff's Response:** |
|---|
| Undisputed but irrelevant for reasons already stated. |

32.     The Court in their Order went through the burden-shifting proof scheme developed by the United States Supreme court in McDonnell Douglas Corp. ultimately finding that there was no causal connection between

the protected activity and the adverse action taken against Plaintiff. Id.

| Plaintiff's Response: |
|---|
| Undisputed but irrelevant for reasons already stated. |

33.  On March 23, 2021, Plaintiff filed a motion requesting a new trial and to relieve Plaintiff from the final decision pursuant to Rule 59 and Rule 60 of the Rules of Civil Procedure. [Exhibit 18] On April 20, 2021, the NC OAH Court denied Plaintiff's Motions filed under Rule 59 and Rule 60. [Exhibit 19]

| Plaintiff's Response: |
|---|
| Undisputed but irrelevant for reasons already stated. |

34.  On April 27, 2021, Plaintiff filed a Notice of Appeal to the North Carolina Court of Appeals of the February 25, 2021 Final Decision of the NC OAH Court as well as the April 20, 2021 Order denying Plaintiff's Motions under Rule 59 and 60. [Exhibit 20] On February 7, 2023, the North Carolina Court of Appeals issued an unpublished opinion in the matter, after receiving briefs from the Parties, affirming the trial court's order. [Exhibit 21] The opinion states [Plaintiff] "seeks what any losing party

31

would seek, another opportunity to establish a prima facie case against the opposing party. [Plaintiff] seeks a second opportunity to present evidence to the OAH that was available during the hearing, although her counsel did not present it. However, this desire hardly amounts to an extraordinary circumstance and essentially is a request for a "second bite at the apple.". [Exhibit 21]

| Plaintiff's Response: |
| --- |
| Undisputed but irrelevant for reasons already stated. |

35. Plaintiff brings allegations against Defendants under Title VII of the Civil Rights Act (41 U.S.C 2000e et seq.) ("Title VII"), the Age Discrimination in Employment Act (29 U.S.C 623 et seq) ("ADEA") as well as violations of the equal protection and free expression under the United State Constitution and also state law claims for also violations of equal protection and free expression under the North Carolina Constitution. Id at 3-5

| Plaintiff's Response: |
| --- |
| Undisputed. |

36.   Plaintiff brings seven claims against all four Defendants, suing them in their individual and official capacities. Id.

| Plaintiff's Response: |
| --- |
| Undisputed. |

37.   Defendant Terri Catlett ("Catlett") was employed with the North Carolina Department of Public Safety as the Director of Healthcare Administration during the relevant times. [Catlett Decl.]

| Plaintiff's Response: |
| --- |
| Undisputed. |

38.   In her role as Director of Healthcare Administration, she had absolutely no involvement with the hiring process for the CEO Position, including whether Ms. Knechtges was selected for the job or another candidate was chosen. Id.

| Plaintiff's Response: |
| --- |
| Disputed.   Catlett's opinion of Knechtges was well-known to Wilson |

and shared by Wilson. Wilson expressed to the other interviewers during the interview process that she could "work with" Lovett (as opposed to Knechtges) and "assuaged" Holbrook's misgivings about Lovett's knowledge, skills and abilities. Moreover, during Secretary Hooks' exit interview of Paula Smith, who worked with Catlett on the second floor of the Randall Building, Smith made disparaging remarks about Knechtges, which could only have come from Catlett, since Smith never herself interacted with or worked with Knechtges. Plaintiff's Declaration.

39. When Ms. Knechtges left the role as Interim CEO and returned to her regular position, she was not in her chain of command. Id.

**Plaintiff's Response:**

It is disputed that Terri Catlett had no influence over Plaintiff's employment once she return to the Central Pharmacy and was under the supervision of Debra Fitzgerald and Janet Thomas. Catlett and Thomas were close and both had animosity towards Plaintiff. Plaintiff's Declaration. Beck Declaration. In addition, Catlett blamed Plaintiff for the fact that she received a written warning for her role in

34

> the controlled substances situation prior to Plaintiff's becoming interim CEO. Plaintiff's Declaration.

40. Catlett did not change her behavior towards Ms. Knechtges while she served as the Interim Chief Executive Officer at the Central Prison ("Interim CEO") or when she returned to Central Pharmacy from being relieved of that interim post in early 2019. Id.

> **Plaintiff's Response:**
>
> It is undisputed that Terri Catlett did not change her behavior in that it remained consistently negative and filled with animosity towards Plaintiff both before and afterwards. Plaintiff's Declaration; Casanova Declaration.

41. Catlett did not do or say anything that could be construed as retaliation against Ms. Knechtges during her tenure as Interim CEO or when she returned to the Apex Pharmacy. Id.

> **Plaintiff's Response:**
>
> Disputed. Plaintiff's Declaration; Casanova Declaration.

42.   This includes but is not limited to excluding her in lunch plans and social outings with co-workers as she alleges. Catlett also did not retaliate by changing her job duties or excluding her from meetings and emails. Id.

| Plaintiff's Response: |
|---|
| Disputed for reasons stated above. |

43.   At no time ever did Catlett make inappropriate or offense comments, jokes, or asked question to or about Ms. Knechtges regarding her race, national origin, sex or age as alleged. Id.

| Plaintiff's Response: |
|---|
| Disputed for reasons stated above but admitted by Plaintiff that she did not personal hear "inappropriate or offense comments, jokes, or asked question to or about Ms. Knechtges regarding her race, national origin, sex or age." |

44.   Ms. Knechtges did discuss with Catlett their prior working relationship and Plaintiff shared rumors she heard of comments purportedly made by me [sic] which were completely not true. Id.

| Plaintiff's Response: |
|---|
| It is undisputed that Plaintiff sought to address Catlett's animosity towards Plaintiff, but Catlett denied the "complete" truth of the remarks that Plaintiff asked her about, Plaintiff took as a partial admission that she had made disparaging remarks about Plaintiff. Plaintiff's Declaration. |

45. At no time did Catlett treat Ms. Knechtges differently due to her membership in a particular protected class or class status. Id.

| Plaintiff's Response: |
|---|
| Disputed. Plaintiff's Declaration. |

46. Catlett believes possibly the only meetings and communications Ms. Knetchges may not have been brought into were pertaining to projects that she was not involved. Id.

| Plaintiff's Response: |
|---|
| Undisputed as to Catlett's beliefs which are not relevant. |

47.  At no time did Catlett give Ms. Knetchges, the "silent treatment"or exclude her from lunch as she alleges.

| Plaintiff's Response: |
| --- |
| Disputed.  Plaintiff's Declaration. |

48.  Defendant Janet Thomas ("Thomas") was employed with the North Carolina Department of Public Safety as the Director of DPS Pharmacy Services but has since retired from State Employment. [Thomas Decl.] In her role as Director of DPS Pharmacy Services, she had absolutely no involvement with the hiring process for the CEO Position, including whether Ms. Knechtges was selected for the job or another candidate was chosen. Id.

| Plaintiff's Response: |
| --- |
| Disputed.  Catlett and Thomas were close and both had animosity towards Plaintiff. Plaintiff's Declaration.  Beck Declaration; Plaintiff Declaration.  In addition, Thomas supervised Fitzgerald and Joe Prater told Plaintiff that Fitzgerald have given her a bad reference, even though Plaintiff listed her because her last performance evaluation by Fitzgerald before Knechtges became CEO was |

> outstanding. Plaintiff's Declaration.

49. Thomas did not change her behavior towards Ms. Knechtges while she served as the Interim Chief Executive Officer at the Central Prison ("Interim CEO") or when she returned to Central Pharmacy from being relieved of that interim post in early 2019. Id. Catlett did not do or say anything that could be construed as retaliation against Ms. Knechtges during her tenure as Interim CEO or when she returned to the Apex Pharmacy. Id. This includes but is not limited to excluding her in lunch plans and social outings with co-workers as she alleges.

> **Plaintiff's Response:**
>
> Disputed. Catlett and Thomas were close and both had animosity towards Plaintiff which others were aware of. Beck Declaration; Plaintiff Declaration; Casanova Declaration.

50. Thomas also did not retaliate by changing her job duties or excluding her from meetings and emails. Id. At no time ever did Thomas make inappropriate or offense comments, jokes, or asked question to or about Ms. Knechtges regarding her race, national origin, sex or age as alleged. Id.

> **Plaintiff's Response:**
>
> Disputed.  Plaintiff's Declaration.

51.　Ms. Knechtges did discuss with Thomas their prior working relationship and Plaintiff shared rumors she heard of comments purportedly made by me [sic] which were completely not true. Id. At no time did Thomas treat Ms. Knechtges differently due to her membership in a particular protected class or class status. Id.

> **Plaintiff's Response:**
>
> It is undisputed that Plaintiff sought to address Thomas's animosity towards Plaintiff, but like Catlett, Thomas' denial of the "complete" truth of the remarks that Plaintiff asked her about was taken by Plaintiff as a partial admission that she had made disparaging remarks about Plaintiff. Plaintiff's Declaration.

52.　Thomas believes possibly the only meetings and communications Ms. Knetchges may not have been brought into were pertaining to projects that she was not involved. Id. At no time did Thomas give Ms. Knetchges, the "silent treatment" or exclude her from lunch as she alleges. Id.

40

> **Plaintiff's Response:**
>
> Undisputed as to Thomas' beliefs which are irrelevant.

53. Defendant Erik Hooks served as the Secretary of the North Carolina Department of Public Safety from January 2017 until retiring in July 2021. [Hooks Affidavit]

> **Plaintiff's Response:**
>
> Undisputed.

54. During his time in the position as Secretary, DPS had multiple agencies under its control, including the SBI, State Highway Patrol, National Guard, and Adult Corrections ("Prisons"), among others. Id.

> **Plaintiff's Response:**
>
> Undisputed, except that until his resignation / retirement at the end of November 2017, Chief Deputy Guice had primary supervisory authority over Adult Corrections because Secretary Hooks lacked any experience with or substantive knowledge about adult corrections or juvenile justice as his experience was primarily with crime control, the

| SBI, Highway Patrol and National Guard. |
| --- |

55.    In his role as Secretary of DPS, he was responsible for overseeing the various agencies in his control. However, each agency had its own hierarchy of staff members that were responsible for the management of their respective agencies.

| **Plaintiff's Response:** |
| --- |
| Undisputed. |

56.    At the relevant time Reuben Young was serving as the Interim Chief Deputy Secretary for Adult Corrections and Juvenile Justice in DPS. [Hooks & Young Decl.]

| **Plaintiff's Response:** |
| --- |
| It is undisputed that Reuben Young became Chief Deputy on December 20, 2017, after until the resignation / retirement at the end of November 2017 by Chief Deputy Guice.  Prior to his leaving NCDPS, Chief Deputy Guice had primary supervisory authority over Adult Corrections because Secretary Hooks lacked any experience with or |

> substantive knowledge about adult corrections or juvenile justice as his experience was primarily with crime control, the SBI, Highway Patrol and National Guard.

57.　Reuben Young was the hiring manager for the Central Prison Hospital CEO position ("CEO Position) posted on August 7, 2018. Id.

| **Plaintiff's Response:** |
|---|
| Undisputed. |

58.　The DPS human resource department provided Mr. Young with seven candidates to interview for the CEO Position. Id.

| **Plaintiff's Response:** |
|---|
| Undisputed. |

59.　Mr. Young established an interview panel that consisted of Dr. Anita Wilson (the Medical Director for the Division of Prisons), Annie Harvey (who at the time was the Deputy Director of Operations for the Division of Prisons, and Doug Holbrook, Chief Financial Officer for DPS. Id.

> **Plaintiff's Response:**
>
> Undisputed. See previous number 13.

60. After the interviews, the panel provided Mr. Young with a recommendation to hire Chad Lovett for the CEO Position. Dr. Wilson also provided a memorandum explaining how Mr. Lovett was the most qualified candidate for the position. [Exhibit 5]. Mr. Young decided to hire Chad Lovett for the CEO Position. Id.

> **Plaintiff's Response:**
>
> Undisputed. In addition, see number 17 above:
>
> - Notably, Wilson's memorandum "detailing Mr. Lovett's superior qualifications" mentioned the following factors:
>   - CPHC had 216 mental health beds and CEO was being sought to be "responsible for ensuring high quality health and psychiatric care."
>     - Lovett had no experience with mental health beds.
>   - Lovett selected due to his "extensive experience as a hospital CEO."
>     - Lovett lacked a BA during all of that experience

prior to 2013. He lacked an MHA degree, required by the posting and the class specifications for the position. Further, he application falsely stated he had an MHA degree.

- o "Along with his administrative experience, he has nine years of correctional experience with the Federal Bureau of Prisons." (BOP)

  - ▪ This experience was omitted on his first application. On his second application, he listed his employment with the federal BOP as a licensed practical nurse and religious service assistant and noted he was supervised by the Chaplain and described his position as having "various duties which would not really apply to current position."

- Wilson's justifications for hiring Lovett over the other internal applicants were:

  - o Knechtges: met the education requirement but did not have extensive CEO experience and did not interview well.

  - o WBL: had healthcare administration experience but lacked the level of education and specific hospital CEO

45

> experience.
>
> o JA: met education requirement but lacked specific hospital CEO experience, Joint Commission accreditation experience, and advanced fiscal management.[3]

61. Mr. Young's decision was based on the recommendation from the interview panel for the CEO Position, the application materials for all applicants, and Dr. Wilson's memorandum. Id.

| Plaintiff's Response: |
| --- |
| Undisputed. See response to number 17 above. See also Plaintiff's Declaration for a comparison the application materials. In addition, the recommendation from the interview panel was not signed by the individual members of the interview panel. |

62. Mr. Young obtained approval from Secretary Erik Hooks to hire Mr. Lovett for the CEO Position. Mr. Lovett was offered the position and accepted. Id.

| Plaintiff's Response: |
| --- |

---

[3] Applicant JA had PhD in Business Administration and an MHA.

| Undisputed. |
| --- |

63.   Mr. Young did not select Plaintiff, Judith Knechtges, for the CEO Position because she was not the most qualified. Plaintiff had significantly less experience in hospital administration than Mr. Lovett. [Exhibit 5].

| **Plaintiff's Response:** |
| --- |
| • It is undisputed that this is the reason given by Defendants for Plaintiff's non-selection. <br><br> • It is disputed that the written application materials and an review of them supports the conclusion that Lovett was substantially more qualified than Plaintiff or even as qualified as Plaintiff for the position.  Plaintiff's Declaration. <br><br> • It is disputed that generic hospital administration experience was the sole factor that was properly considered in selecting the most qualified applicant. <br><br> • It is also disputed that Lovett met the minimum education criteria for the position in that he lacked an MHA, even though he stated on his application that he had such a degree. |

- It is also disputed that Lovett's experience as a hospital CEO at the facilities at which he worked prior to obtaining his terminal college degree was comparable to Plaintiff's experience.

- It is also disputed that Wilson's memorandum relied solely on Lovett's hospital administration experience and also referred to his correctional experience which Lovet himself described as unrelated to the duties of the CEO position and which was as a Licensed Practical Nurse and a Chaplain's assistant.

64. DPS wanted someone with significant hospital administrative experience because Central Prison Hospital was such an important part of DPS and also because the mismanagement of that facility had the potential to create large liabilities. Id.

**Plaintiff's Response:**

This is disputed because if significant hospital experience, especially with the delivery of correctional healthcare was actually important, Defendants inexplicably failed to interview applicant CC who had more than eight (8) years of correctional healthcare experience. Prater Declaration Exhibits.

65.    Mr. Young's decision, confirmed by Erik Hooks, not to hire Plaintiff for the CEO Position was not retaliatory or otherwise based on her reporting of: fraud, violations of law or regulation, misappropriation of State resources, dangers to the public health and safety, gross mismanagement, a gross waste of monies, or gross abuse of authority. Id.

| Plaintiff's Response: |
| --- |
| Mr. Young's decision, confirmed by Secretary Hooks, relied on Wilson's memorandum and the applications which showed the following and which demonstrated that the decision to reject Plaintiff was pretext for illegal discrimination and retaliation for raising issues of public concern about mismanagement of CPHC by the previous CEO and Defendant Catlett, as well as disparaging remarks made by Wilson, Thomas, Fitzgerald and others who resented the improvements made by Plaintiff which they considered to be implicit criticism of their management decisions which resulted in overspending by NCDPS and increased liability for CPHC. In addition, they opposed the plan by Chief Deputy Guice and Deputy Secretary Joe Prater to reorganize the organizational structure of correctional healthcare delivery and to |

> provide Plaintiff with a role in that structure. Prater Declaration;
> Casanova Declaration; Kittrell Declaration; Guice Declaration.

66. As Secretary, Erik Hooks was not directly involved in the hiring process for the CEO position but relied on Reuben Young as the hiring manager to provide him with a recommendation. Id.

> **Plaintiff's Response:**
>
> - Disputed in that Young could not have hired Lovett without Hooks' approval and Hooks explicitly prevented Prater and Guice from hiring Knechtges when considered among four internal applicants. In addition, Young ultimately compiled a new interview team which interviewed the same previous four internal applicants and only one additional external applicant, Chad Lovett.
> - Moreover, the decision to hire Lovett relied on his having an MHA which he did not, and which he represented that he did, on his application.
> - Two internal applicants, applicant JA and Plaintiff actually did have MHAs but this was discounted for a variety of pretextual

> reasons designed to ensure Plaintiff was not selected for the
> position.

Respectfully submitted, this  31st day of May 2024.


/s/ VALERIE L. BATEMAN                    /S/ JUNE K. ALLISON
Valerie L. Bateman                        June K. Allison
NEW SOUTH LAW FIRM                        NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350                 233 S. Laurel Avenue
Carrboro, North Carolina 27510            Charlotte, NC  28207
Tel:  919-810-3139                        Tel:  704-277-0113
Fax: 919-823-6383                         Fax: 919-823-6383
valerie@newsouthlawfirm.com               june@newsouthlawfirm.com
NC State Bar No. 13417                     NC State Bar No. 9673
*Counsel for Plaintiff*                    *Counsel for Plaintiff*

51

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS** was served by filing the document electronically via the CM/ECF system, which will send notification of such filing to all counsel of record

This 31st day of May 2024.

> /S/ VALERIE BATEMAN
> Valerie L. Bateman
> NEW SOUTH LAW FIRM
> *Counsel for Plaintiff*