IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-225-BO

JUDITH KNECHTGES,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　O R D E R
　　　　　　　　　　　　　　　　　　)
N.C. DEPARTMENT OF PUBLIC　　　　　 )
SAFETY, ERIC HOOKS, in his individual )
and official capacity, JANET THOMAS, in )
her individual and official capacity, and )
TERRI CATLETT, in her individual and )
official capacity,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　 )

This cause comes before the Court on defendants' motion for summary judgment and plaintiff's motions for extension of time. The appropriate responses and replies have been filed, or the time for doing so has expired, and in this posture the motions are ripe for ruling. For the reasons that follow, plaintiff's motions for extension of time [DE 107 & 113] are granted and defendants' motion for summary judgment [DE 98] is also granted.

BACKGROUND

Plaintiff commenced this action by filing a complaint on May 17, 2021. [DE 1]. Her complaint alleges seven claims against defendants arising from her non-selection as Chief Executive Officer (CEO) of Central Prison Hospital. Plaintiff alleges that in violation of Title VII she was not promoted to this position on the basis of her sex and age and that defendants unlawfully retaliated against her after she complained. Plaintiff further alleges that defendants violated her

First and Fourteenth Amendment rights under the United States Constitution and her similar rights under the North Carolina Constitution.

After a lengthy period for discovery, defendants filed the instant motion for summary judgment on April 29, 2024. Plaintiff sought additional time within which to respond to the motion and filed her response in opposition and supporting documentation on May 31 and June 1, 2024.[1] For good cause shown, the Court grants plaintiff's motions for extension of time.

The following factual background is derived from the undisputed material facts unless otherwise indicated. [DE 110]. Plaintiff began working for the State of North Carolin in 2003. Plaintiff is a pharmacist by training and began to work for the Department of Public Safety Central Pharmacy beginning in 2003. [DE 129] Knechtges Decl. ¶ 8. In April 2016, plaintiff was appointed by the director of the Department of Public Safety (DPS) to serve as the Acting Hospital CEO for Central Prison Hospital (Acting CEO). [DE 124-4]. The CEO position was at all relevant times an exempt managerial position which is not subject to certain protections provided under Article 1, Chapter 126 of the North Carolina Human Resources Act. At the time of her appointment to the Acting CEO position, plaintiff was serving as the Pharmacy Director at Apex Central Pharmacy.

While plaintiff served as Acting CEO, she made a number of changes and improvements to the organization, some of which were not well received. This included working with the federal Drug Enforcement Administration regarding the diversion of controlled substances in the prisons, correcting issues which had been identified in prior audits, [DE 124] Prater Decl. ¶¶ 11-17; 22, enforcing attendance policies, and prohibiting health care providers, like other prison employees, from bringing their personal cell phones into the prison. [DE 125] E. Thomas Decl. ¶¶ 11-18.

---

[1] Plaintiff has filed, due to technical difficulties, several declarations and exhibits twice, with the first filing failing to include the signature of the declarant. *See* [DE 114-DE 120]. For clarity, the Court has considered only the declarations and their attachments filed on June 1, 2024, with the declarant's signature included and pursuant to the amended appendix at [DE 123].

Plaintiff also identified a number of costs savings measures, some of which were adopted and some of which were not, *see, e.g.,* [DE 128] Casanova Decl. ¶¶ 11-12, and was "committed to improving the delivery of correctional health care to inmates in both the general hospital population and the mental health hospital." E. Thomas Decl. ¶ 7. Some individuals did not approve of or appreciate plaintiff's work as Acting CEO or the changes she made. Prater Decl. ¶ 27. Joseph Prater, the former Deputy Secretary for Administration for the Division of Adult Correction and Juvenile Justice, has stated that he was aware that defendant Secretary Hooks believed disparaging remarks which had been made about plaintiff while she was Acting CEO and that, because of those disparaging remarks, plaintiff would not be selected for the permanent CEO position. *Id.* ¶ 28. Plaintiff alleges that after she became Acting CEO, defendants Terri Catlett, Deputy Director of Health Services, and Janet Thomas, Director of DPS Pharmacy Services, "worked relentlessly to undermine Plaintiff . . . and to sabotage her ability to manage the facility." Compl. ¶ 42.

In April 2017, DPS posted the position of a permanent CEO for Central Prison Hospital but the position was not filled. Plaintiff was interviewed for the first posting, which was posted only to internal applicants, and selected by the panel for the position. Prater Decl. ¶¶ 29-40; [DE 124-12]. Though the paperwork confirming plaintiff's selection to the CEO position was completed, prior to its approval by Secretary Hooks, Secretary Hooks stated that he would re-post the position and open it to external candidates in order to afford opportunities to candidates with either administrative experience in correctional healthcare or CEO experience. *Id.* ¶ 42; [DE 124-14]. Internal applicants who had applied to the first posting did not need to reapply, and the second posting was made on December 20, 2017. [DE 124-15]. Plaintiff reapplied for the CEO position, but no applicants were selected. *See* [DE 127] Lang Decl.

DPS posted the position again on August 7, 2018. All prior applicants were directed to reapply for the position, which included revised knowledge, skills, and abilities criteria. *See* [DE 112] Ex. 2; Ex. 3. The then-Interim Chief Deputy Secretary of DPS, Reuben Young, replaced Prater, who had retired, as the hiring manager for the position. Plaintiff applied for the CEO position on August 19, 2018. Plaintiff and four other applicants were interviewed on October 2, 2018, by an interview panel consisting of three people, one of whom had served on the prior interview panels. Young made the initial decision to hire Chad Lovett as CEO based on the applications and interview panel responses. Young then received approval from Secretary Hooks and Lovett was offered the CEO position. On December 12, 2018, plaintiff was notified that her temporary position was ending and that she would return to her position as Pharmacy Director at Apex Central Pharmacy.

According to plaintiff, her return to the Central Pharmacy was difficult. Plaintiff alleges that after her return to the Central Pharmacy several people were cold and distant. Compl. ¶ 118. Plaintiff believed that Janet Thomas was treating plaintiff differently from other employees because Thomas did not support plaintiff's assignment to the Acting CEO position. *Id.* ¶ 117. Plaintiff took leave but found that hostility had increased when she returned. *Id.* ¶ 120. Plaintiff's job responsibilities had been changed by Thomas and plaintiff alleges that she was excluded from meetings. *Id.* ¶ 121. Plaintiff alleges that she suffered hostility, belittlement, and humiliation by Thomas and that plaintiff was paid less than all other Pharmacy Directors. *Id.* ¶¶ 124-127. Thomas issued plaintiff a Documented Counseling Session in June 2019, which plaintiff alleges was the peak of the hostility. *Id.* ¶ 136.

Plaintiff began filing internal complaints and requesting temporary reassignment. Her request for temporary reassignment was ultimately declined, as was her renewed request for

4

reassignment. *Id.* ¶¶ 146-156. She also alleges that on one occasion Lovett remarked about her age, *id.* ¶ 159, and that she continued to be treated with hostility and disparagingly by Thomas, both in meetings and in conversations plaintiff overheard Thomas having with other staff members. *Id.* ¶ 161-171. After a contentious meeting on October 17, 2019, plaintiff fainted in the hallway. *Id.* ¶ 172. She was reassigned to a different location on October 21, 2019. *Id.* ¶ 173.

On February 22, 2019, plaintiff filed a petition for a contested case hearing in the North Carolina Office of Administrative Hearings (OAH). [DE 56-16]. Plaintiff raised two claims in her OAH complaint: that she had been denied priority consideration as a state government employee and that she had engaged in protected activity under N.C. Gen. Stat. § 126-84 and DPS retaliated against her for engaging in those activities by denying her a promotion. Plaintiff alleged that DPS, *inter alia*, deprived her of property, substantially prejudiced her rights, and violated the Constitution. *Id.* On September 11, 2019, and Administrative Law Judge (ALJ) granted DPS's motion for summary judgment as to plaintiff's promotional priority claim but denied summary judgment on her whistleblower retaliation claim. [DE 56-17]. Plaintiff then voluntarily dismissed her case without prejudice while reserving her right to refile within one year. [DE 56-19].

Plaintiff refiled her petition for a contested case hearing against DPS on May 22, 2020. [DE 56-20]. Plaintiff raised the same claims that she has raised in her first OAH petition. A trial was conducted before ALJ Melissa Owens Lassiter on August 28, 2020. On February 25, 2021, ALJ Lassiter entered a final decision in the matter in favor of DPS. [DE 56-22]. The hearing decision reflects that, during the OAH trial, plaintiff was represented by counsel, exhibits were admitted into evidence, and witness testified. ALJ Lassiter made findings of fact and conclusions of law which included, as is relevant here, that plaintiff engaged in protected activity, that she suffered an adverse action when she was denied a promotion for which she applied, and that

5

plaintiff had failed to establish that DPS's lawful reasons for choosing Lovett instead of plaintiff for the CEO position were pretextual. *Id.* Concl. of Law ¶¶ 17-20. ALJ Lassiter found that while plaintiff's "evidence created some inference of retaliation by [DPS] in selecting Chad Lovett, instead of [plaintiff], for the CEO position[,]". . . "the preponderance of [plaintiff's] [pretext] evidence was based upon her own inferences and unsupported speculation." *Id.* ¶ 20. ALJ Lassiter found that DPS had presented a legitimate, nondiscriminatory basis for selecting Lovett, specifically that Lovett was "substantially more qualified than [plaintiff], had extensive years of hospital CEO experience, and provided superior interview responses to the panel's interview questions." *Id.* ¶ 18.

Plaintiff, proceeding *pro se*, subsequently moved for a new trial and sought relief from the final decision pursuant to Rules 59 and 60 of the Rules of Civil Procedure. [DE 56-23]. The ALJ denied plaintiff's motions [DE 56-24] and plaintiff noticed an appeal to the North Carolina Court of Appeals. [DE 56-20]. By unpublished opinion filed February 7, 2023, the North Carolina Court of Appeals affirmed the OAH's denial of plaintiff's motions for a new trial and relief from the final decision under Rules 59 and 60. [DE 56-26].

In the instant complaint, plaintiff alleges seven claims against all named defendants and has named the individual defendants in both their individual and official capacities. Plaintiff alleges that: defendants violated Title VII of the Civil Rights Act of 1964, as amended, when they discriminated against her on the basis of her sex when she was not selected for the CEO position (Count One); defendants violated the Age Discrimination in Employment Act (ADEA) when she was denied promotion to the CEO position (Count Two); defendants retaliated against her in violation of Title VII and the ADEA for protesting the selection of a younger male applicant for the CEO position by creating a hostile work environment and that when plaintiff protested the

6

hostile work environment she was retaliated against by being left in the hostile work environment (Count Three); defendants deprived plaintiff of her right to equal protection under the United States Constitution when she was treated differently from other male applicants (Count Four); defendants deprived plaintiff of her right to free speech in violation of the United States Constitution when their reasons for denying plaintiff the promotion were pretext for adverse actions taken against her (Count Five); defendants deprived plaintiff of her right to equal protection under the North Carolina Constitution when they treated her differently from other male applicants (Count Six); and defendants deprived plaintiff of her rights to free speech under the North Carolina Constitution by taking adverse action against plaintiff, including denying her the promotion and subjecting her to a hostile work environment, because plaintiff exercised her free speech rights (Counts VII). [DE 1]. As relief, plaintiff asks the Court to issue an injunction directing Secretary Hooks to hire plaintiff as the CEO of the Central Prison Healthcare Complex;[2] enjoin defendants from discriminating against her on the basis of her sex and age; order defendant to make plaintiff whole by awarding her lost earnings and other lost benefits, with prejudgment interest as well as other affirmative relief necessary to eradicate the effects of its unlawful employment practices; and order defendant to make plaintiff whole by providing her with compensation for nonpecuniary losses, including but not limited to emotional pain, suffering, and inconvenience. *Id.*

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met,

---

[2] The parties and declarants refer variously to both "Central Prison Hospital" and "Central Prison Healthcare Complex." The Court herein uses only "Central Prison Hospital."

the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

A. Claim and issue preclusion

Defendants argue first that res judicata bars plaintiff's claims. Defendants also argue that issue preclusion, or collateral estoppel, bars the relitigation of issues determined by the OAH. The Court applies North Carolina law to determine whether any prior decisions have preclusive effect on this case, and it must give any state court judgment the same effect as a North Carolina court would. *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008); *see also* 28 U.S.C. § 1738.

"Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties." *Id.*, 535 F.3d at 287. Collateral estoppel, also known as issue preclusion, "bars the relitigation of specific issues that were actually determined in a prior action." *Id.* Under North Carolina law, res judicata applies where there is "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both

8

the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 84 (2005). Collateral estoppel applies where "(1) the issues are the same as those involved in the prior action; (2) the issues have been raised and actually litigated in the prior action; (3) the issues were material and relevant to the disposition of the prior action and (4) the determination of the issues in the prior action was necessary and essential to the resulting judgment." *Megaro v. McCollum*, 66 F.4th 151, 160 (4th Cir. 2023).

There are two prior decisions to consider: the final decision of the OAH and the decision of the North Carolina Court of Appeals. The final OAH decision is an administrative decision which was, in fact, not reviewed by the court of appeals, which reviewed only the denial of plaintiff's Rule 59 and 60 motions. [DE 56-26 p. 4] ("The underlying final decision entered by the ALJ on 25 February 2021, is not before [the court of appeals] for review."). The Court must then determine whether North Carolina state courts would give preclusive effect to the OAH's unreviewed final decision. *See Megaro*, 66 F.4th at 158.

"[F]ederal courts are directed to give preclusive effect to unreviewed administrative decisions 'when a state agency acting in a judicial capacity... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Id.* at 158-159, (quoting *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 191 (4th Cir. 1994)); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986).

Plaintiff does not contest that the OAH was acting in a judicial capacity when it resolved her claims. At the trial before ALJ Lassiter, plaintiff was represented by counsel, evidence was admitted, witnesses testified, and plaintiff had the opportunity to cross examine the witnesses. After the trial, ALJ Lassiter issued findings of fact and conclusions of law regarding plaintiff's

9

claims. Plaintiff was provided the opportunity to appeal the decision to the North Carolina Court of Appeals, which she did after filing post-decision motions.

The Court concludes that North Carolina courts would give preclusive effect to the unreviewed OAH final decision. However, "[f]ollowing *Elliott,* circuit courts have uniformly held that unreviewed administrative agency findings can never be afforded preclusive effect in a subsequent Title VII action." *Rao v. Cnty. of Fairfax, Va.*, 108 F.3d 42, 45 (4th Cir. 1997). The same is true for claim brought under the ADEA. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 113 (1991). This is not the case, though, for § 1983 claims, for which "administrative fact-finding [can] have preclusive (collateral estoppel) effect." *Rao v*, 108 F.3d at 45. Accordingly, the Court considers only whether issue preclusion applies to plaintiff's § 1983 claims.

As to plaintiff's First Amendment retaliation claim, the OAH has determined that plaintiff had failed to prove that by not selecting her for the CEO position DPS retaliated against her for engaging in protected activity, specifically reporting instances of mismanagement and waste of state money to her supervisors, the same acts which plaintiff alleges in the instant complaint constituted speech regarding matters of public concern. [DE 56-22 ¶¶ 9-10; 21]; [DE 1 ¶¶ 79, 214, 200]; *see also Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004) (retaliation violates First Amendment where employee speaks on matters of public concern, employee's interest in protected expression outweighs employer's interest in efficient workplace operation, and there is a causal connection between the retaliatory action and protected expression). The issue decided in the OAH is the same, it was raised and actually litigated in the OAH, it was material and relevant to the disposition of the OAH proceeding, and, as the issue presented, was necessary and essential to the judgment. The Court will afford preclusive effect to the OAH's decision on this issue as it satisfies

each requirement for collateral estoppel, and determines that it bars plaintiff's First Amendment retaliation claim.

Because equal protection employment discrimination claims proceed under a Title VII framework, the Court will note that the OAH has determined that DPS's proffered reasons for not selecting plaintiff were not pretextual, and plaintiff is barred from relitigating that issue in her § 1983 equal protection claim. However, the Court further finds that, as is discussed more fully below, plaintiff has failed to create a genuine issue of material fact as to pretext.

In her response to the motion for summary judgment, plaintiff relies on *Passaro v. Virginia*, 935 F.3d 243, 251 (4th Cir. 2019), to argue against giving preclusive effect to the OAH decision. Plaintiff's argument misses the mark. The *Passaro* court held that a subsequent *claim* will not be barred where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Passaro*, 935 F.3d at 251 (quoting *Davidson v. Capuano*, 792 F.2d 275 (2nd Cir. 1986)). The *Passaro* court also noted that, had the issue of retaliation been raised and actually decided, collateral estoppel could apply to bar relitigation of that issue. *Id.* at 252. That is precisely the case here. The OAH, acting in a quasi-judicial capacity, has decided that plaintiff was not retaliated against for engaging in the same actions upon which she now relies to support her First Amendment claim. The First Amendment retaliation claim is barred by collateral estoppel.

B. Title VII and ADEA claims

At the outset, plaintiff may not proceed on her Title VII or ADEA claims against any individual defendant in his or her individual capacity, as such claims may only be brought against an employer. *Lissau v. Southern Food Serv.*, 159 F.3d 177, 180–81 (4th Cir. 1998); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (official capacity suit is "suit against the official's office").

11

For a Title VII or ADEA plaintiff who does not come forward with direct or circumstantial evidence of discrimination which motivated her employer's adverse employment action, she may prove her employment discrimination claim under the *McDonnell Douglas* burden-shifting framework. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284-85 (4th Cir. 2004). A plaintiff who proceeds under the *McDonnell Douglas* burden-shifting framework must demonstrate first a prima facie case of discrimination, after which the burden shifts to the employer to show that the reason for the adverse employment action was legitimate and non-discriminatory. *See, e.g., Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). The plaintiff must then prove that the employer's proffered legitimate reason was pretext for discriminatory treatment. *Id.*

Plaintiff alleges that she was denied the promotion to CEO based upon her sex, female, and age. A prima facie case of discrimination based upon the failure to promote is established when a plaintiff can show "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996). The same elements are necessary for an ADEA failure to promote claim. *See Sutton v. Cree, Inc.*, 386 F. Supp. 2d 600, 605 (M.D.N.C. 2005).

Defendants limit their arguments to plaintiff's failure to rebut the legitimate, nondiscriminatory reason proffered for plaintiff's non-selection as CEO. The Court agrees that plaintiff has satisfied her low burden to establish a prima facie case of discrimination. Plaintiff is a member of protected classes, there was an open position for which she was qualified and applied, and, viewing the facts and inferences in her favor, her selection for the CEO position after the first

Case 5:21-cv-00225-BO   Document 145   Filed 08/20/24   Page 12 of 19

set of interviews but non-selection after the second and third set of interviews gives rise to an inference of discrimination.

To establish a legitimate, non-discriminatory reason for not selecting plaintiff for the CEO position, defendants have proffered the following. On November 1, 2018, one of the interview panelists for the third posting of the CEO position sent a letter to Kenneth Lassiter, Director of Prisons, explaining the decision to select Lovett as well as the decision not to select plaintiff. [DE 56-9]. The letter details that Lovett was selected based upon his "extensive experience as a hospital CEO." *Id.* The letter further explains that, among other things, Lovett had experience with the Joint Commission Accreditation process as well as specific experience relating to community physician relationships and recruitment and direction of medical staff. The letter notes that Lovett has a master's degree in healthcare administration and concludes that it was his experience and education which caused the panel to select him. *Id.* Plaintiff was not selected because she lacked the extensive CEO experience and did not interview well. *Id.* The record before the Court demonstrates that defendants have satisfied their burden of production to demonstrate a non-discriminatory, legitimate basis for not selecting plaintiff. In addition to the letter documenting the reasons for Lovett's selection and plaintiff's non-selection, plaintiff has filed the transcripts of the testimony of two of the interview panelists, both of whom state that they found plaintiff qualified but not the best candidate for the position. *See* [DE 129-19; DE 129-20]; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (once defendant meets its burden of production to show legitimate basis for adverse action, prima facie case is rebutted).

"A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir.

13

2006). Plaintiff has failed to create a genuine issue of fact as to pretext for her Title VII and ADEA discrimination claims.

First, plaintiff has proffered no evidence, direct or circumstantial, that the defendants' legitimate reasons for her non-selection were based upon her sex or age other than her own, subjective beliefs, which at this stage are insufficient to create a genuine issue of material fact.[3] *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011). Plaintiff's declaration and evidence supports that she was qualified for the CEO position, which defendants do not dispute. She has not pointed to any evidence, however, which would support the inference that she was not selected because of either her age or her sex.

Plaintiff attempts to create an issue of fact as to pretext by arguing that Lovett was not qualified for the CEO position. Plaintiff points to the fact that Lovett did not hold a bachelor's degree when he first served as CEO of a hospital organization, purportedly to suggest that he was a less qualified candidate than plaintiff, but plaintiff does not identify how this failed to satisfy the job posting criteria as she does not dispute that Lovett later obtained his undergraduate degree. Plaintiff also argues and cites in her response to the statement of material facts that Lovett did not, in fact, have a master's degree in healthcare administration (MHA) as reflected in his application materials. *See, e.g.,* [DE 110 ¶ 10]; *id.* ¶ 17 (stating Lovett lacked an MHA degree and falsely stated on his application that he had an MHA but citing no portion of the record to support this contention). Plaintiff cites to her own declaration, generally, to support this argument, but the

---

[3] Plaintiff has filed several documents in support of her motion for summary judgment which are marked "Confidential – Subject to Protective order." Plaintiff has not sought leave to file these documents under seal and defendants have not sought any restriction to their access. *See* [DE 37] ¶ 12 (Confidential Information in this case must be filed under seal, but erroneously citing Local Civil Rule 6.1 rather than Section VI of the Policy Manual); *see also, e.g.,* [DE 114-17]; [DE 114-18]. Should either party seek to restrict access to any publicly filed document that is subject to the protective order, the party may so move within twenty-one days of the date of entry of this order.

14

Court has been unable to identify any portion of the declaration which addresses Lovett's education. Plaintiff has filed Lovett's application materials, which state that he received an MHA degree. [DE 124-18 p. 92 of 151]; [DE 129-31 p. 11 of 19]. Without any evidence that Lovett falsified or included misstatements in his application, there is no genuine issue of fact as to whether Lovett was actually qualified for the position.[4] Additionally, even crediting plaintiff's unsupported argument, plaintiff has failed to create a genuine issue of material fact as to whether any defendant responsible for hiring Lovett knew at the time he was selected that there were any false statements on his application materials.

The substance of the declarations filed by plaintiff supports that plaintiff served successfully in the position of Acting CEO, and that while doing so she made difficult decisions, some of which were not received well by certain members of the organization. It is only plaintiff's speculation, however, that supports the inference that it was her sex or age which caused her to not ultimately be selected for the permanent CEO position. Plaintiff herself declares that "It appears to me that the Respondent simply wanted me out of my position because my positive achievements exposed serious problems, made them more accountable to their position responsibilities." [DE 129] Knechtges Decl. ¶ 110. She further states that she "knew from the moment the first posting was cancelled that Defendant wanted to get rid of me. My achievements were exceptional, so it had been related [sic] to other facts such as being a woman, my age, and my ethnicity."[5] *Id.* ¶ 118.

---

[4] Throughout plaintiff's response to defendants' Local Civil Rule 56.1 statement, plaintiff fails to include citations as required by Local Civil Rule 56.1(a)(4). Many of plaintiff's responses do not include any citation, and where citations are included plaintiff cites to a declaration in full rather than a specific portion of the declaration. In addition to violating this Court's Local Civil Rules, "it is not the court's duty to comb the record and develop an argument for Plaintiff." *Brinston v. City of Easley, S.C.*, No. 8:20-CV-3660-TMC, 2023 WL 2643837, at *11 (D.S.C. Mar. 27, 2023)."

[5] Plaintiff does not claim in her complaint any violation of Title VII based on ethnicity or race.

15

But plaintiff's perceptions about her own performance and qualifications are not relevant to the Title VII inquiry. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Prater supports plaintiff's declaration that she served in the CEO position successfully and that she was qualified for the permanent position. *See, generally,* [DE 124] Prater Decl. However, his statements do not create a genuine issue of material fact as to whether it was truly plaintiff's sex or age that were the reasons she was not selected, rather than Lovett's qualifications and experience. Prater states that Terri Catlett held plaintiff in low regard and that Catlett and Kenneth Lassiter "did not embrace the changes" plaintiff and Prater were trying to make. Prater Decl. ¶ 27. Prater also states that, prior to her retirement, the Medical Director for the Division of Prisons made disparaging remarks about plaintiff's work as Acting CEO, and that Secretary Hooks and Young were aware of these statements. Prater does not explain specifically what these "disparaging remarks" were, and it is plaintiff's burden at this stage to come forward with evidence that creates a genuine issue of material fact.

Plaintiff's other evidence falls similarly short. For example, Rosemarie Casanova has stated that Catlett would stand in plaintiff's way to prevent plaintiff's ideas from being implemented and that plaintiff was an excellent Acting CEO. [DE 128] Casanova Decl. ¶¶ 5, 14. While plaintiff has presented evidence that she was not liked by certain individuals, she simply has not presented evidence that her sex or her age played any part in her non-selection as CEO.

A court need not determine whether an employer's reasoning was "wise, fair, or even correct, ultimately, so long as it truly was the reason" for the adverse employment decision. *DeJarnette*, 133 F.3d at 299 (citation omitted). Defendants have proffered evidence that Lovett was selected based on his qualifications, experience, and favorable interview, and plaintiff has failed to come forward with evidence which creates a genuine issue of material fact as to pretext.

Defendants are entitled to summary judgment on plaintiff's Title VII and ADEA discrimination claims.

For her retaliation claim under either Title VII or the ADEA, plaintiff must establish that (1) she engaged in protected activity, (2) her employer took adverse action against her, and (3) a causal connection exists between the protected activity and adverse action. *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 718 (4th Cir. 2024); *see Murphy v. FRB of Richmond*, Civil Action No. 3:19cv180, 2020 U.S. Dist. LEXIS 11294, at *18 (E.D. Va. Jan. 22, 2020). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer an explanation for the adverse action that is non-discriminatory, after which plaintiff must establish that the explanation is mere pretext. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

Plaintiff alleges in her complaint that she protested the selection of a younger male applicant for the CEO position and was subjected to a hostile work environment in retaliation for her protest, and that, after she complained about the hostile work environment, she was retaliated against by being left in the hostile work environment. Plaintiff's allegations are based on treatment she allegedly received from defendants Janet Thomas and Terri Catlett after she completed her time as Acting CEO.

Plaintiff does not raise any argument regarding a hostile work environment in her opposition to the motion for summary judgment, in which defendants expressly argue that neither Thomas nor Catlett treated plaintiff in any disparate or hostile way. *See* [DE 122]. The Court may thus consider plaintiff to have conceded this issue insofar as it is based on any alleged hostile work environment. *Allen v. City of Dunn*, __ F. Supp.3d __, 2023 WL 8934647, at *9 (E.D.N.C. Dec. 27, 2023). Instead, plaintiff argues that her evidence supports an inference that she was not selected for the CEO position in retaliation for the actions she took while she served as Acting CEO. Only

17

plaintiff's First Amendment retaliation claim is based upon allegations regarding actions plaintiff took while serving as Acting CEO, and the Court has determined that collateral estoppel bars its consideration of plaintiff's First Amendment retaliation claim. Defendants are entitled to summary judgment on plaintiff's Title VII and ADEA retaliation claim.

C. Equal protection claim

First, defendants have argued, and plaintiff does not contest, that Eleventh Amendment immunity bars § 1983 claims for compensatory damages from DPS and the individual defendants acting in their official capacities. *Ballenger v. Owens*, 352 F.3d 842, 844 (4th Cir. 2003). The Court agrees.

"The equal protection clause confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994). Courts apply the Title VII framework to decide equal protection claims brought on the basis of sex discrimination. *Id.*

For those reasons discussed above, plaintiff has failed to proffer evidence which creates a genuine issue of material fact as to pretext. Summary judgment in defendants' favor is therefore appropriate as to this claim.

D. State Constitution claims

In her opposition to defendants' motion for summary judgment, plaintiff does not argue that her claims based on the North Carolina Constitution should proceed and she has thus conceded the issue. Additionally, North Carolina courts have decided that where a plaintiff has an adequate remedy at state law, she may not proceed with a claim under the state's constitution. *See Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 338-340 (2009). Defendants argue that plaintiff had adequate remedies under state law and has pursued those remedies by filing contested case

petitions in the OAH. *See Copper v. Denlinger*, 363 N.C. 784, 789 (2010) (adequate remedy exists where plaintiff has opportunity to enter courthouse and present claim). Defendants are therefore entitled to summary judgment on these claims as well.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motions for extensions of time to respond to the motion for summary judgment [DE 107 & 113] are GRANTED for good cause shown. Defendants' motion for summary judgment [DE 98] is GRANTED. The clerk is DIRECTED enter judgment in favor of defendants and close the case.

SO ORDERED, this __19__ day of August 2024.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE